932 F.2d 1443
 60 USLW 2009, 119 Lab.Cas. P 10,814,
13 Employee Benefits Ca 2508
 PLUMBERS AND STEAMFITTERS LOCAL NO. 150 PENSION FUND,
Plumbers and Steamfitters Local No. 150 Health and Welfare
Fund, A.F. Williams, R.K. Dunbar, W.C. Sanders, Gary R.
King, Tom Salley, Peter Menk, as trustees of the aforesaid
funds, Plaintiffs-Appellees, Cross-Appellants,
v.
VERTEX CONSTRUCTION COMPANY, INC., Defendant-Appellant,
Cross-Appellee.
 No. 90-8033.
 United States Court of Appeals,
Eleventh Circuit.
 June 10, 1991.
 
 John W. Oxendine, Norcross, Ga., for defendant-appellant, cross-appellee.
 Randall A. Constantine, Jane E. Jordan, Elrod & Thompson, Atlanta, Ga., for plaintiffs-appellees, cross-appellants.
 Appeals from the United States District Court for the Southern District of Georgia.
 Before KRAVITCH and COX, Circuit Judges, and RONEY, Senior Circuit Judge.
 KRAVITCH, Circuit Judge:
 
 
 1
 Trustees of the Plumbers and Steamfitters Local No. 150 Pension Fund (the "Pension Fund") and the Plumbers and Steamfitters Local No. 150 Health and Welfare Fund (the "Health and Welfare Fund") (collectively the "Funds") sought relief in the district court against Vertex Construction Company, Inc. The Funds requested that the court order Vertex to comply with a demand by the Funds to audit several of Vertex's business records in order to ensure that Vertex was complying with its obligations under a collective bargaining agreement to contribute to the Funds on behalf of Vertex's union employees. Vertex refused to produce certain documents, arguing that it was not contractually bound to produce the documents and that the documents contained confidential business information. The district court granted summary judgment in favor of the Funds, ordering Vertex to produce the disputed documents, subject to several restrictions designed to protect Vertex's privacy. We affirm.
 
 I. Background
 
 2
 The Pension Fund and the Health and Welfare Fund are trusts created in 1966 for the purpose of providing benefits to union employees whose employers make contributions to the Funds. Each trust was created pursuant to an Agreement and Declaration of Trust. The Funds are administered by six trustees, three chosen by the employer contributors to the Funds, and three chosen by the union. Each Agreement and Declaration of Trust is amended from time to time. The relevant documents in this case are the Amended Agreement and Declaration of Trust for each fund, effective January 1, 1983. (R. 7A-6). Because the pertinent provisions of each Amended Agreement and Declaration of Trust are substantially the same, the remainder of this opinion will refer to the two agreements collectively as the "Amended Agreements."
 
 
 3
 The Amended Agreements have several provisions relevant to the issues before us. The Amended Agreements define a "Collective Bargaining Agreement" as "any Collective Bargaining Agreement existing between the Employer and the Union which provides for contributions into this Trust Fund...." (R. 7A, Exhibit B at 4). An "Employer" under the Amended Agreements is any firm that
 
 
 4
 is bound by the Collective Bargaining Agreement with said Union and in accordance therewith agrees to participate in and contribute to the Trust Fund herein created and provided for. Any Employer who contributes to the Trust Fund created hereunder shall, by the act of contributing, become a party to this Agreement whether or not any such contributing Employer has signed this Agreement or a counterpart thereof.
 
 
 5
 (R. 7A, Exhibit B at 3). The Amended Agreements give broad powers to the trustees. They state:
 
 RIGHT OF ACCESS
 
 6
 The Trustees or any authorized agent or representative of the Trustees shall have the right at all reasonable times during business hours to enter upon the premises of any Employer obligated to contribute to the Trust Fund and to examine and copy such books, records, papers and reports of said Employer as may be necessary to determine whether said Employer is making full payment to the Trustees of the amount required by the Collective Bargaining Agreement with said Employer.
 
 
 7
 (R. 7A, Exhibit B at 8). In addition to the right of access, the trustees also have a number of other powers, including the right to demand and collect payments to the funds owed by employers, the full and exclusive right to determine all questions concerning coverage and eligibility under the funds, the right to amend the Amended Agreements at any time, and the right to take legal action on behalf of the funds. (R. 7A, Exhibit B at 8, 17, 31, 33).
 
 
 8
 In December 1986, Vertex entered into a collective bargaining agreement with the Plumbers and Steamfitters Local Union No. 150. This collective bargaining agreement is the only relevant document in the record signed by Vertex. The collective bargaining agreement specified a number of wage and labor conditions to be used when Vertex employed members of the union. Article Six of the agreement was entitled "Rate of Wages" and specified the wage rates for particular classifications of workers. According to the rate of wages section, employees were to receive cash wages, plus contributions into four funds, entitled "H & W," "Local Pension," "National Pension," and "Apprentice Fund." Incorporated in the rate of wages section of the agreement is a section entitled "National Pension Fund." This section describes the employer's obligations to make payments to the "National Pension Fund," and states in relevant part:
 
 
 9
 The Employer, by signing the Standard Form of Participation Agreement, or by signing a Collective Bargaining Agreement providing for participation in the Plumbers and Pipefitters National Pension Fund, agrees to be bound by all of the terms and conditions of the Restated Agreement and Declaration of Trust. Any Employer so adopting the Restated Agreement and Declaration of Trust thereby ratifies, accepts and designates as its representatives the Employer Trustees and successor Employer Trustees to adopt amendments to the Restated Agreement and Declaration of Trust. The Employer hereby acknowledges receipt of a copy of the Restated Agreement and Declaration of Trust in effect when this Agreement is signed.
 
 
 10
 . . . . .
 
 
 11
 [T]he Trustees shall have the authority to have a qualified representative audit the payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the Pension Fund.
 
 
 12
 (R. 7A, Exhibit C at 5) (emphasis added). Although the above provisions mention the Restated Agreement and Declaration of Trust of the national pension fund, neither the Amended Agreement and Declaration of Trust of the local Pension Fund nor the Amended Agreement and Declaration of Trust of the Health and Welfare Fund is ever mentioned in the collective bargaining agreement.
 
 
 13
 In 1988, the trustees of the Funds authorized Wade Stevenson & Co., P.C. to conduct an audit of certain Vertex records in order to determine whether Vertex was making all of its required contributions to the Funds. The Funds' administrative manager wrote Vertex and explained that the auditor would need access to the following records: (1) all employees' earning cards; (2) quarterly federal withholding tax returns; (3) payroll journals; (4) cancelled payroll checks; (5) personnel records; (6) employees' time cards; (7) contribution reports submitted to the Funds; and (8) cash disbursements journals. (R. 7C, Exhibit A). At that time, Vertex did not object to any of the items on this list. When the auditor arrived at Vertex's offices several months later, however, the Vertex bookkeeper, acting on instructions from James Williams, Vertex's President, informed the auditor that he could not have access to cash disbursements records and certain other records. The auditor therefore aborted the audit. Counsel for the Funds then sent a letter[1] to Vertex demanding access to the records requested in the earlier letter. Vertex claimed that cash disbursements were not covered in the collective bargaining agreement, thus Vertex would not provide these records.
 
 
 14
 The Funds filed a complaint in district court, basing subject matter jurisdiction on the Employee Retirement Income Security Act (ERISA). The complaint alleged that pursuant to the Funds' Agreements and Declarations of Trust and pursuant to the collective bargaining agreement, the Funds were entitled to audit "the payroll, tax, and personnel records" of Vertex. The complaint also alleged that the Funds were entitled to costs and attorneys fees pursuant to ERISA and "the terms of the Funds' Agreements and Declarations of Trust." Vertex argued that neither the Articles of Agreement nor ERISA provided for access to cash disbursements journals, and furthermore, the complaint did not ask for access to cash disbursements journals. Vertex also counterclaimed, seeking attorneys fees due to the Funds' "stubbornly letitious [sic] conduct." The district court granted summary judgment in favor of the Funds, holding that the Funds were entitled to access to Vertex's cash disbursements journals and certain other specified records. In order to protect Vertex's confidential, non-personnel information, the district court appointed a special master to oversee the audit. The district court also denied the Funds' request for attorneys fees and dismissed Vertex's counterclaim for attorneys fees. Both parties appeal.II. Sufficiency of the Complaint
 
 
 15
 The Funds' complaint in this case stated that the Funds were "entitled to audit the payroll, tax, and personnel records" of Vertex. (R. 1-4). Vertex argues that because cash disbursements journals were not specifically stated in the complaint, the Funds are not entitled to them. This argument is meritless. Federal Rule of Civil Procedure 8(a) requires that a pleading contain a short and plain statement showing that the pleader is entitled to relief and a demand for judgment for the relief sought. "A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." Sams v. United Food & Comm'l Workers Int'l Union, 866 F.2d 1380, 1384 (11th Cir.1989) (emphasis added). Vertex was on notice as to the claim being asserted against it in this case. The Funds requested access to Vertex's cash disbursements journals from the very beginning of this controversy, (R. 7C, Exhibit A), and the record is replete with correspondence between the parties indicating that the main point of contention between them was the cash disbursements journals. Moreover, Vertex's response to the Funds' motion for summary judgment focuses on the issue of the cash disbursements journals, as do its legal memorandum and affidavits in support of its response. (R. 12-10, 11, 15-17, 22, 26). Thus, we find that the complaint was adequate under the liberal notice pleading standards of the Federal Rules of Civil Procedure to put Vertex on notice of the claims against it.
 
 
 16
 III. The Funds' Rights as a Matter of Agreement
 
 
 17
 Vertex's principal argument is that it never agreed in the collective bargaining agreement, the only document which Vertex signed, to allow an audit of the scope envisioned by the Funds. Vertex asserts that the collective bargaining agreement stated only that Vertex would be bound by the Restated Agreement and Declaration of Trust. The Amended Agreements, which give broad powers to the trustees of the Funds, are never even mentioned in the collective bargaining agreement. Additionally, the collective bargaining agreement specifically gave the trustees of the "Pension Fund" the right to audit only Vertex's "payroll and wage records." Thus, according to Vertex, the Funds cannot rely on documents not even mentioned in the collective bargaining agreement to achieve greater authority than that expressly stated in the agreement.
 
 
 18
 Federal courts review collective bargaining agreements de novo. Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp., 920 F.2d 1491, 1493 (9th Cir.1990); Central States Southeast and Southwest Areas Pension Fund v. Kraftco, Inc., 799 F.2d 1098, 1109 (6th Cir.1986) (en banc), cert. denied, 479 U.S. 1086, 107 S.Ct. 1291, 94 L.Ed.2d 147 (1987). "In construing any contract, including a collective bargaining agreement, determining the intent of the parties is the essential inquiry." Loveless v. Eastern Air Lines, Inc., 681 F.2d 1272, 1279 (11th Cir.1982). The interpretation of collective bargaining agreements is governed by federal law; however, traditional contract interpretation rules are applied if they are consistent with federal labor policies. International Union, United Auto., Aerospace, and Agric. Implement Workers of America v. Yard-Man, Inc., 716 F.2d 1476, 1479 (6th Cir.1983), cert. denied, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984). Vertex contends that its intention was to be bound by the express terms of the collective bargaining agreement. The Funds have made no allegations that there is any extrinsic evidence indicating a contrary intent. Thus, our interpretation of the contract is based solely on the document itself. See id. at 1480 n. 1.
 
 
 19
 Our review of the collective bargaining agreement convinces us that not only does the agreement itself fail to bind Vertex to the Amended Agreements, but moreover, the agreement itself gives no authority to the trustees of the Pension Fund or the Health and Welfare Fund to conduct an audit at all. The only references to the two plaintiff Funds in the collective bargaining agreement occur in Article Six of the agreement. Article Six is entitled "Rate of Wages." (R. 7A, Exhibit C at 3). The Rate of Wages section first provides a table listing the wages to be paid by Vertex to various classifications of workers. Each worker classification receives a cash wage, plus credit for contributions into four funds: "H & W," "Local Pension," "National Pension," and "Apprentice Fund." "H & W" refers to the plaintiff Health and Welfare Fund, and "Local Pension" refers to the plaintiff Pension Fund. Thus, under the agreement, Vertex is contractually bound to make contributions to the plaintiff Funds. Article Six, and the rest of the collective bargaining agreement, however, never mention the Amended Agreements that govern the two Funds.
 
 
 20
 In contrast, the other two funds mentioned in Article Six are explained in greater detail later in the agreement. Following the wage contribution tables in Article Six is a section of Article Six entitled "National Pension Fund." That section is divided into five enumerated subsections, which specify Vertex's obligations to the national pension fund. One of those obligations contemplates that Vertex will be bound to the national pension fund's trust agreement, the "Restated Agreement and Declaration of Trust." Although the subsections refer only to the "Pension Fund," we are convinced for two reasons that the references are to the national pension fund and not the local Pension Fund. First, all of the references to the "Pension Fund" are located within enumerated subsections of a section entitled "National Pension Fund." Second, one of the subsections indicates that the "Pension Fund" was established in 1968. The plaintiff local Pension Fund in this case was established in 1966, and so could not be the fund referred to in this section. (R. 7A-2).
 
 
 21
 After the "National Pension Fund" section, the collective bargaining agreement contains Article Seven, which is entitled "Apprenticeship Training." Article Seven refers to Vertex's duty under the agreement to make contributions to the apprenticeship fund, and also discusses other obligations concerning apprenticeship training.
 
 
 22
 The doctrine of expressio unius est exclusio alterius instructs that when certain matters are mentioned in a contract, other similar matters not mentioned were intended to be excluded. International Union of District 50 v. Bowman Transportation, Inc., 421 F.2d 934, 935 (5th Cir.1970);[2] see also American Agric. Chem. Co. v. Tampa Armature Works, Inc., 315 F.2d 856, 859 (5th Cir.1963). Here, as discussed above, the agreement provided for contributions to four funds. As to two of those funds, the agreement went on to discuss other obligations relating to them. In fact, the section discussing the national pension fund specifically addressed the issue of binding Vertex to the fund's governing document. In light of the collective bargaining agreement's explanations of Vertex's duties with respect to the national pension fund and the apprenticeship fund, and with not even a hint in the agreement that the Amended Agreements exist, we must conclude that the collective bargaining agreement does not bind Vertex to the Amended Agreements.
 
 
 23
 In addition to holding that the broad powers granted to the trustees of the Funds by the Amended Agreements are not binding on Vertex, we further hold that the more limited power to audit described in the collective bargaining agreement is not intended to grant any authority to the trustees of the Funds. Vertex argues that the Funds may not audit Vertex's cash disbursements journals because the collective bargaining agreement only gives them the authority to audit Vertex's "payroll and wage records." In fact, the agreement only grants that authority to the trustees of the national pension fund. The provision concerning auditing is located in the section of the agreement entitled "National Pension Fund." As discussed above, that section has no application to the plaintiff Funds in this case. Accordingly, we hold that the collective bargaining agreement itself grants no authority to the trustees of the Funds to conduct any type of audit.
 
 IV. The Funds' Rights as a Matter of Law
 
 24
 Having concluded that the collective bargaining agreement does not confer upon the trustees of the Funds a right to conduct the audit at issue, we must now address an issue of first impression in this circuit: Whether an employer who, pursuant to a collective bargaining agreement, makes contributions to an employee benefit trust fund governed by ERISA, is bound by the trust agreement for that fund, despite the fact that the trust agreement is not incorporated in the collective bargaining agreement. We hold that the trust agreement is binding on the contributing employer.
 
 
 25
 As discussed above, the Funds in this case were established in 1966, twenty years before Vertex and the union entered into the collective bargaining agreement at issue in this case. As required by ERISA, see 29 U.S.C. Sec. 1102, the Funds have written formal trust documents governing their operation. Those documents, the Amended Agreements in this case, were last amended in 1983. The Amended Agreements provide that any employer who contributes to the Funds is bound by the Amended Agreements whether or not the employer has signed the Amended Agreements.
 
 
 26
 The Amended Agreements also grant broad powers to the trustees of the Funds. Most important to this appeal, the trustees may "examine and copy such books, records, papers and reports of [a contributing employer] as may be necessary to determine whether said Employer is making full payment" to the Funds. The trustees can also amend the agreement at any time, take legal action on behalf of the Funds, demand payments owed by employers, and determine questions concerning coverage and eligibility.
 
 
 27
 ERISA provides that trustees have a fiduciary duty to act "solely in the interest of the participants and beneficiaries and ... in accordance with the documents and instruments governing the plan," so long as those documents and instruments are consistent with ERISA. 29 U.S.C. Sec. 1104(a)(1)(D). In Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, 472 U.S. 559, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985), the Supreme Court discussed the powers of trustees under trust agreements covered by ERISA. Although the trust agreement in Central Transport was incorporated in the collective bargaining agreement, the language used by the Court in that case is nevertheless instructive. The Court stated that "[o]ne of the fundamental common law duties of a trustee is to preserve and maintain trust assets, ... and this encompasses 'determin[ing] exactly what property forms the subject-matter of the trust [and] who are the beneficiaries.' ... The trustee is thus expected to 'use reasonable diligence to discover the location of trust property and to take control of it without unnecessary delay.' " Id. at 572, 105 S.Ct. at 2841 (citations omitted). The Court went on to note that "[t]he provisions of ERISA make clear that a benefit plan trustee is similarly subject to these responsibilities, not only as a result of the general fiduciary standards of loyalty and care, borrowed as they are from the common law, but also as a result of more specific trustee duties itemized in the Act." Id. Several of those duties are similar to the duties required of the trustees by the terms of the Amended Agreements in this case.
 
 
 28
 To say that trustees have fiduciary duties to protect vigorously the assets of their trust in accordance with trust documents, however, does not, a fortiori, answer the question of whether trustees may direct their activities toward parties who are not signatories to the trust documents. Nevertheless, we conclude that the nature of the relationship between the employer, the union, and the trust dictates that the trustees may do so.
 
 
 29
 It is undisputed that Vertex was bound under the collective bargaining agreement to make contributions to the Funds. Although the Funds were not a party to the collective bargaining agreement, Vertex no doubt understood that by accepting the contributions, the Funds were bound to pay benefits to Vertex's employees. We fail to see how Vertex can avail itself of the benefits of the Funds without also being subjected to the rules that govern them. See Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp., 920 F.2d 1491, 1494 (9th Cir.1990).
 
 
 30
 To hold otherwise would allow employers and unions to bargain away the rights and powers of fund trustees in agreements to which the trustees were not a party. Such a situation ultimately would result in underfunded plans that could not pay appropriate benefits to their beneficiaries. As the Supreme Court noted in Central Transport, the Secretary of Labor takes the view that plans covered by ERISA must pay benefits earned by employee participants regardless of whether a participant's employer actually made its required contributions to the plan. Central Transport, 472 U.S. at 567 n. 7, 105 S.Ct. at 2838 n. 7 (citing Department of Labor Advisory Op. No. 76-89 (Aug. 31, 1976)); see also Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Serv., Inc., 870 F.2d 1148, 1153 (7th Cir.1989) (en banc) ("Pension plans believe that their obligations to employees stem from the terms of the participation agreements, and that employers' failure to fulfill their promises is irrelevant.").
 
 
 31
 This reasoning is consistent with the recognition by other courts that trust funds are independent of the employers that contribute to them and the union employees who benefit from them. In addressing the very issue that is before us in this case, the court in Miramar Hotel stated that "neither an employer nor a union, singly or together, can alter the terms of a trust instrument such as the one involved in this case unless the power to do so was reserved when the trust was created or properly amended." Miramar Hotel, 920 F.2d at 1495 (quoting Sinai Hosp. of Baltimore, Inc. v. National Benefit Fund for Hosp. & Health Care Employees, 697 F.2d 562, 567 (4th Cir.1982) (citing NLRB v. Driver Salesmen, 670 F.2d 855 (9th Cir.1982))). In Central Transport, the Court addressed whether unions could be relied on to police employer contributions to benefit plans. The Court stated:
 
 
 32
 [A] local union's duties to bargaining-unit workers is a general duty to act in the group's interests regarding the overall terms and conditions of employment. The trustees' duty, in contrast, is to provide specific benefits to those who are entitled to them in accordance with the terms of the plan. That the general nature of a union's duty may result in less than full protection to individual entitlements has been well recognized in our cases....
 
 
 33
 Central Transport, 472 U.S. at 576-77, 105 S.Ct. at 2843. Similarly, the Court has stated that "ERISA vests the 'exclusive authority and discretion to manage and control the assets of the plan' in the trustees alone, and not the employer or the union." NLRB v. Amax Coal Co., 453 U.S. 322, 333, 101 S.Ct. 2789, 2796, 69 L.Ed.2d 672 (quoting 29 U.S.C. Sec. 1103(a)) (emphasis added) (1981). In light of the independent nature of trusts, employers, and unions, we are convinced that if employers and unions collectively bargain for contributions to an ERISA-covered plan, they may not limit the rights of the trustees of the plan under the governing documents of the plan. Thus, pursuant to the Amended Agreements, the Funds have the authority to conduct an audit of the documents that they requested in the district court.
 
 
 34
 Vertex further argues, however, that even if the Funds have a right to conduct the audit, the audit ordered by the district court is too broad and too intrusive. Specifically, Vertex contends that examination of its cash disbursements journals is an invasion of its privacy because those records include payments to suppliers and other confidential business information. Moreover, Vertex contends that examination of the cash disbursements journals is unnecessary to determine accurately if Vertex is complying with its obligations to contribute to the Funds.
 
 
 35
 The district court considered Vertex's privacy concerns when fashioning its order in this case. The court appointed a special master to monitor the audit. The special master is authorized to determine whether certain documents are relevant to the audit and is authorized to require the auditors to maintain confidentiality with respect to the cash disbursements journals. (R. 2-2-3). This is consistent with the Supreme Court's opinion in Central Transport, which noted that upon a proper showing a court may limit the scope of an audit. See Central Transport, 472 U.S. at 582 n. 23, 105 S.Ct. at 2846 n. 23, see also DeMarco v. C & L Masonry, Inc., 891 F.2d 1236, 1240 (6th Cir.1989). The district court's order in this case adequately protects Vertex's privacy rights.
 
 
 36
 We also hold that examination of the cash disbursements journals is not irrelevant for the purposes of the audit. In support of their motion for summary judgment, the Funds submitted an affidavit of an accountant stating that all of the documents requested by the Funds were relevant to their audit. (R. 7B-3). The Funds assert that they can only be sure that Vertex is complying with its obligations to contribute if they examine all records relating to sources of cash out of which Vertex could be concealing payments to employees. In light of the district court's confidentiality restrictions, this is a reasonable request. Other courts also have found this to be the case. See DeMarco, 891 F.2d at 1240; Trucking Employees v. Brockway Fast Motor Freight Co., 130 F.R.D. 314, 322 (D.N.J.1989).[3]
 
 
 37
 V. Vertex's Counter-Claim for Attorneys Fees
 
 
 38
 Vertex appeals the district court's dismissal of its counter-claim for attorneys fees. In its counter-claim, Vertex alleged that the Funds engaged in "stubbornly letitious [sic] conduct," forcing Vertex to retain counsel and incur attorneys fees and other costs. (R. 4-5). The district court noted that this claim was basically a statement which says that the Funds sued before Vertex had a chance to settle. (R.Supp. at 31). We agree. The record includes much correspondence from each party, from both before and after the complaint was filed, showing that the parties were aware of each other's position, and that neither side was willing to compromise that position on certain issues. We see nothing to indicate that the Funds' lawsuit was inappropriately filed.
 
 
 39
 VI. The Funds' Cross-Appeal for Attorneys Fees
 
 
 40
 The district court made the following statement from the bench in denying attorneys fees to the Funds:
 
 
 41
 [T]he documents that I have seen and the argument that Mr. Oxendine [counsel for Vertex] has made makes it clear to me there is certainly a basis and a reasonable basis on which to defend this action. The rather vague linkage between the defendant employer and the profferd [sic] agreements to which plaintiffs allege that the defendant has to adhere to, by way of contributions to these seperate [sic] funds are confusing and would be, not only in the mind of the reasonable business person, but the reasonable lawyer. There are many questions about the extent to which those documents apply in a given situation. Consequently there will be no award of attorney's fees nor any award of costs in this proceeding up until now.
 
 
 42
 (R.Supp. at 32).
 
 
 43
 Title 29 U.S.C. section 1132(g)(1) allows courts to award attorneys fees in ERISA cases. Our standard of review on this issue is abuse of discretion. Evans v. Bexley, 750 F.2d 1498, 1500 (11th Cir.1985). This court has enumerated five factors for guiding courts in determining fee awards under section 1132(g)(1): (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys fees; (3) whether an award of attorneys fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. Curry v. Contract Fabricators Inc. Profit Sharing Plan, 891 F.2d 842, 849 and n. 14 (11th Cir.1990) (citing Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255 (5th Cir.1980)).
 
 
 44
 The Funds argue that the statement by the district court denying attorneys fees is an abuse of discretion because the court failed to articulate the factors cited above. The Funds point to this court's statement that review of attorneys fee issues "requires that the district court state the reasons for his disposition of a request for attorney's fees.... His analysis must include the criteria enunciated in Iron Workers...." Evans v. Bexley, 750 F.2d at 1500 (citations omitted). We do not take this statement to mean that a district court must specifically list each of the Iron Workers factors in every case. In Iron Workers, we stated that "[n]o one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address.... In particular types of cases, or in any individual case, however, other considerations may be relevant as well." Iron Workers, 624 F.2d at 1266. Thus, the Iron Workers court realized that the factors provided in the opinion were merely guidelines intended to aid courts in their analysis. Although the Funds are correct that it would be helpful if district courts specifically referred to each of the Iron Workers factors in their analysis, so long as a court's analysis takes these guidelines into account, it does not abuse its discretion by not enumerating each and every one.
 
 
 45
 We conclude that the district court did not abuse its discretion. The district court's statement encompassed the first and fifth Iron Workers factors. The statement that "there is certainly a basis and a reasonable basis" for defending the action indicates that the district court found that Vertex had not acted in bad faith. Moreover, the court's statements concerning the confusion about the documents and the many questions about the application of the documents indicate that the district court considered this a close case. After reviewing the record and the relevant law, we agree with the district court. Based on this conclusion, we also deny the Funds' request for sanctions pursuant to Fed.R.App.P. 38.
 
 VII. Conclusion
 
 46
 In accordance with the above discussion, the decision of the district court is AFFIRMED.
 
 
 
 [1]
 Two letters were actually sent, but Vertex did not respond to the first. The parties dispute whether Vertex received the first letter. This factual dispute, however, is not material to the resolution of the legal issues in the case
 
 
 [2]
 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as precedent the decisions of the former Fifth Circuit issued before October 1, 1981
 
 
 [3]
 Vertex claims that there is a material disputed issue of fact in that Vertex submitted an affidavit of an accountant claiming that cash disbursements journals were not relevant to the audit. The affidavit in question, however, stated only that "[c]ash disbursement journals generally do not contain personnel records and are not needed to determine if an employer is making required contributions." (R. 12-31) (emphasis added). This statement does not conflict with the position of the Funds. The Funds do not dispute that cash disbursements journals generally do not contain personnel information. The purpose of the audit in this case, however, was to determine whether Vertex was concealing personnel information by using unorthodox accounting methods