NEW YORK STATE TEAMSTERS CONFERENCE PENSION AND RETIREMENT FUND, by its Trustees, Paul E. Bush, Victor C. Olivadoti, Charles Bentley, James Carlton, Frank Posato, Dawson Cunningham, Anthony Simoes and Ronald Morin, Plaintiff,

v.

BOENING BROTHERS, INC., Defendant.

NEW YORK STATE TEAMSTERS CONFERENCE PENSION AND RETIREMENT FUND, by its Trustees, Paul E. Bush, Victor C. Olivadoti, Charles Bentley, James Carlton, Frank Posato, Dawson Cunningham, Anthony Simoes and Ronald Morin, Plaintiff,

v.

CHARLES SNYDER BEVERAGES, INC., Defendant.

Nos. 91–CV–324 (FJS), 92–CV–569 (FJS).

United States District Court,
N.D. New York.

July 7, 1995.

Peter P. Paravati, P.C. (Vincent M. DeBella, of counsel), Utica, NY, for plaintiff.

Kelley, Drye & Warren (Eugene T. D'Ablemont, of counsel), New York City, for defendants.

### DECISION AND ORDER

SCULLIN, District Judge.

### INTRODUCTION

This is an action to determine the New York State Teamsters Conference Pension and Retirement Fund's (the "Plaintiff Fund") right to audit the payroll records of Boening Brothers, Inc. ("Boening") and Charles Snyder Beverages, Inc. ("Snyder"), employers that contribute to the Plaintiff Fund.[1] Boening and Snyder refused to submit to the requested audit claiming that they are contractually obligated to make contributions to the Plaintiff Fund, but are not obligated to submit to an audit. The Court holds that Boening and Snyder, by making contributions to the Plaintiff Fund in accord with collective bargaining agreements ("CBAs"),

are bound by the Plaintiff Fund's governing documents as a matter of law, and are thus subject to an audit.

### BACKGROUND

The Plaintiff Fund is a multiemployer plan as defined in the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(37)(A), and was established "for the purpose of providing pensions or retirement benefits" to Teamster union members covered by pertinent CBAs. Agreement and Declaration of Trust, DeBella Aff., Ex. C. The Plaintiff Fund was created by an Agreement and Declaration of Trust ("Trust Agreement") that governs its operation, and is managed by a Board of Trustees comprised of both employer and union trustees. Trust Agreement, DeBella Aff., Ex. C. The defendants, Boening and Snyder, contribute to the Plaintiff Fund in accord with CBAs between the defendants and the Brewery Delivery Employees Local Union No. 46., International Brotherhood of Teamsters. None of the CBAs require defendants to abide by the Trust Agreement. Indeed, the relevant CBA provisions are sparse at best and provide for little more than the required level of employer contribution per worker.

Prior to 1973 the defendants and other brewery employers contributed to the Brewery Workers Pension Fund ("Brewery Fund") on behalf of their "regular" employees in the bargaining unit, i.e., workers in the bargaining unit who work a certain number of days in a year. In 1973, the Plaintiff Fund absorbed the Brewery Fund under a Merger Agreement, which provided for the continuation of contributions and benefits previously controlled by the Brewery Fund. Specifically, the Merger Agreement provided that "each Employer under the Brewery Trust [i.e., the document that established the Brewery Fund] shall be considered to be an Employer within the meaning of that term under the Teamsters Trust." Merger Agreement, DeBella Reply Aff., Ex. A at 8–9. Further, the Merger Agreement provided that contributions made under the CBAs "shall be

---

1. Although the Plaintiff Fund sued each defendant separately, the parties agree that the actions involve common questions of law and fact, and therefore the Court will consolidate the two actions. Fed.R.Civ.P. 42(a).

made in accordance with any rules established by the Trustees of the [Plaintiff] Fund." *Id.* The Merger Agreement also purported to require the "Brewery employers" to execute participation agreements. *Id.*

In 1974 numerous brewery employers initiated litigation to invalidate the Merger Agreement on grounds of fraud and misrepresentation. At around the same time, the Plaintiff Fund refused to accept the contributions of, and terminated the participation of, the defendants and other brewery employers who refused to sign participation agreements. A preliminary injunction issued for the pendency of that litigation which required the Plaintiff Fund to accept defendants' contributions and required the defendants to submit " 'Employer Report Form[s]' documenting the amount and date of the contributions." *See Brewery Delivery Employees Local No. 46, IBT, et al. v. Mosley, et al.,* 80–CV–1476 (E.D.N.Y. March 5, 1981); DeBella Reply Aff., Ex. C. Prior to that case being decided on the merits the parties executed a Settlement Agreement which included a stipulation that the Merger Agreement was "valid, final and binding" and that Boening and Snyder would not take any action "to challenge the validity" of the Merger Agreement. Settlement Agreement dated Aug. 30, 1990, DeBella Reply Aff., Ex. D. The parties also stipulated that they reserved whatever rights they had to seek or challenge any requested audits or requirements that a participation agreement be executed.[2] *Id.*

Currently, the Plaintiff Fund relies on its governing documents and Trust Agreement rules to claim it has the right to conduct the audit at issue in the case at bar.

The Trust Agreement provides in relevant part:

> The Trustees shall have the power to manage and control the administration and operation of the Fund and Plan.
> The Trustees ... shall have the power to demand, collect, receive and hold the em-

ployer contributions and take such steps ... as may be necessary or desirable to effectuate the collection of such Employer Contributions.

> ....

> The Board of Trustees shall have the Power to make rules and regulations not inconsistent with the terms hereof to carry out the provisions hereof.

Trust Agreement, DeBella Aff., Ex. C at 2, 9. Under its rulemaking power, the Plaintiff Fund, through its Board of Trustees, promulgated a rule that "require[s] participating employers to submit to an examination of the employer payroll records." Memo from the Board of Trustees to Participating Employers, DeBella Aff., Ex. C.

In May 1989 the Plaintiff Fund sought to audit the defendants' payroll records dating back to November 1977. The defendants refused to submit to the audit. The Plaintiff Fund pursued the matter again in early 1991, and was again rebuffed. Consequently, the Plaintiff Fund brought the current action seeking a permanent injunction requiring defendants to permit the Plaintiff Fund to audit the defendants' payroll records and for an award of attorneys' fees. The Plaintiff Fund seeks the audit to verify whether proper pension contributions were submitted on behalf of defendants' employees. The defendants maintain that the Plaintiff Fund does not have the authority to conduct an audit of all its employees' payroll records; however, they do agree to submit to an audit of "the payroll records of all 'regular' employees in the bargaining unit for the period encompassed by the current collective bargaining agreement[s]" between the defendants and Local No. 46's successor. D'Ablemont Aff., Ex. I. The Plaintiff Fund refused to accept the defendants' offer and has moved for summary judgment.

## DISCUSSION

### I. STANDARDS FOR SUMMARY JUDGMENT

■ Summary judgment is appropriate only when the moving party shows that no

---

**2.** It should be noted that in unrelated litigation the Plaintiff Fund's right to require the execution of participation agreements as a condition of accepting contributions was upheld. *See Morse*

*v. New York State Teamsters Conference Pension and Retirement Fund,* 580 F.Supp. 180 (W.D.N.Y. 1983), *aff'd,* 761 F.2d 115 (2d Cir.1985).

genuine issue of material fact exists as a matter of law. *See, e.g.,* Fed.R.Civ.Proc. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). An unresolved factual issue is one that a reasonable fact-finder could decide in favor of either party. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

## II. THE RIGHT TO AUDIT

■ As stated, the Plaintiff Fund claims that it has the right to audit the defendants' payroll records in accord with the terms of the Trust Agreement, the Merger Agreement and the Settlement Agreement. The stated purpose of the requested audit is to "verify[ ] that required pension contributions are made upon all eligible and appropriate employees." Plf.'s Mem. at 3. The Plaintiff Fund contends that "[t]he audit ensures that the [Plaintiff] Fund is properly funded and further ensures that all eligible employees are credited with the correct contributions toward the accumulation of pension credits." *Id.*

Defendants refuse to submit to the audit contending that they are not signatories to the Trust Agreement nor any participation agreement and are therefore not bound by the terms of those documents. Defendants also claim that the CBAs—the only documents they have signed—do not purport to bind them to the terms of the Trust Agreement, nor do they grant the Fund the right to conduct the requested audit. The defendants claim that their obligations are co-extensive with the CBAs, *i.e.,* only to make contributions to the Plaintiff Fund. In essence, the defendants argue that the Plaintiff Fund "is merely a repository of contributions that the Company is required to place into the [Plaintiff] Fund pursuant to agreement with the Union." Def.'s Mem. at 8.

In *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport,* 472 U.S. 559, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985), the Supreme Court held that an employer who participates in an ERISA-governed multiemployer benefit plan must submit its employees' records to an audit. In that case, the employers contributing to the fund expressly agreed in the CBAs "to be bound by the trust agreements that govern [the fund]," and agreed to ratify actions taken by the trustees within their scope of authority. *Id.* at 562, 568 n. 8, 105 S.Ct. at 2836, 2839 n. 8. The employers also executed participation agreements which bound them to the trustees' actions made pursuant to the trust agreements and rules. *Id.* at 568 n. 8, 105 S.Ct. at 2839 n. 8. Further, the trust agreements in *Central States* granted the trustees broad powers to collect contributions, to protect the integrity of such contributions once made and to "examine the [employer's] pertinent records" whenever "necessary or advisable" for proper trust administration. *Id.* at 566, 105 S.Ct. at 2838.

Based on those documents the Court found that the plaintiffs had clear authority to conduct the audit at issue. Further, the Court found that the audit accorded with ERISA principles, which hold trustees responsible for fully informing plan participants of their rights and status under a plan and assuring the financial integrity of a plan "by determining the class of potential benefit claimants and holding employers to the full and prompt fulfillment of their contribution obligations." *Id.* at 574, 105 S.Ct. at 2842. The Court thus held: "Given Congress' vision of the proper administration of employee benefit plans under ERISA, we have little difficulty holding that the audit requested by [the trustees] is well within the authority of the trustees as outlined in the trust documents." *Id.* at 580, 105 S.Ct. at 2845.

The present controversy is distinguishable from *Central States,* however, because here there is a lack of clear contractual obligations binding the defendants to the Trust Agreement.

A case more directly on point is *Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.,* 920 F.2d 1491 (9th Cir.1990), *cert. denied,* 501 U.S. 1232, 111 S.Ct. 2855, 115 L.Ed.2d 1023 (1991). There, an employee benefit fund sought to audit the payroll records of an employer that contributed to the fund under the terms of a CBA. The fund claimed it had the right to audit the employer's records because of the fund's governing documents, which defined "employers" as those who had agreed to be bound by

the terms of the fund and those who made contributions to it. The documents also defined "employees" as persons whose employers were bound by the fund's rules or covered by a CBA. Although the pertinent CBA did not expressly bind the defendant-employer to the fund's terms, the court found that the parties expected the defendant-employer to be bound by them. The court reasoned: "While [the defendant] is not a signatory to the Trust Agreement, it is undisputed that it contributed to the Fund and intended its employees to receive benefits from the Fund. [The defendant] would not make contributions if it did not intend its employees to receive benefits from the Fund." *Id.* at 1494.

The court further reasoned:

If [the defendant's] employees are participants in the Fund, then it necessarily follows that [the defendant] is an employer under the Trust Agreement. [The defendant] cannot have it both ways.... [The defendant] and its employees cannot receive the benefits of the Fund yet escape its attendant burdens, in this case, the provisions of the Trust Agreement permitting the Trustees to audit an employer's books and records.

*Id.* at 1494. Accordingly, the court held that "[o]nce [the defendant] intended its employees to be covered by the Fund, the Trust Agreement governing the Fund requires [the defendant] to be bound to its terms." *Id.*

The Eleventh Circuit adopted the same reasoning in *Plumbers and Steamfitters Local No. 150 Pension Fund v. Vertex Constr. Co.*, 932 F.2d 1443 (11th Cir.1991). There, employee benefit funds sought to audit the payroll records of an employer that contributed to the funds under the terms of a CBA. The CBA did not, however, provide for such an audit nor did it expressly bind the employers to the funds' governing documents. Despite the lack of contractual obligation, the court held that because the employers contributed to the funds in accord with the CBA they were bound by the funds' governing documents. *Id.* at 1450–51. The court reasoned:

It is undisputed that [the defendant] was bound under the collective bargaining agreement to make contributions to the Funds. Although the Funds were not a party to the collective bargaining agreement, [the defendant] no doubt understood that by accepting the contributions, the Funds were bound to pay benefits to [the defendant's] employees. We fail to see how [the defendant] can avail itself of the benefits of the Funds without also being subjected to the rules that govern them.

*Id.* at 1451 (citing *Miramar*, 920 F.2d at 1494). To hold otherwise, the court noted, "would allow employers and unions to bargain away the rights and powers of fund trustees in agreements to which the trustees were not a party. Such a situation ultimately would result in underfunded plans that could not pay appropriate benefits to their beneficiaries." *Id.*

This Court finds the reasoning of *Miramar* and *Vertex* persuasive. Here, the defendants contributed to the Plaintiff Fund in accord with CBAs, intending their employees to get the benefits of the Plaintiff Fund. The Merger Agreement, which Boening and Snyder agreed was valid and binding, provided that those who were considered "employers" under the old Brewery Trust would be considered "employers" under the new Trust Agreement. Merger Agreement, DeBella Reply Aff., Ex. A at 8–9. The Merger Agreement further provided that contributions made under the CBAs "shall be made in accordance with any rules established by the Trustees of the [Plaintiff] Fund." *Id.* The Trustees of the Plaintiff Fund promulgated a rule requiring "participating employers to submit to an examination of the employer payroll records." Memo from the Board of Trustees to Participating Employers, DeBella Aff., Ex. C. "We fail to see how [Boening and Snyder] can avail [themselves] of the benefits of the [Plaintiff Fund] without also being subjected to the rules that govern [it]." *Vertex*, 932 F.2d at 1451.

Therefore, the Court holds that Boening and Snyder, by making contributions to the Plaintiff Fund in accord with CBAs, are bound by the Plaintiff Fund's governing doc-

uments as a matter of law, and are thus subject to the requested audit.[3]

## II. SCOPE OF THE AUDIT

■ By holding that the Plaintiff Fund is able to conduct the audit, the Court is next faced with determining its permissible scope. The complaints in these actions seek to permanently enjoin defendants "from refusing to permit the plaintiff to audit the payroll records of the defendant[s];" and that "[d]efendant[s] be ordered to make all appropriate company records available for the purpose of a Fund audit."[4] Defendants contend that the requested audit is "unreasonable" and "harassing" because it seeks to examine the payroll records of all employees—both bargaining unit employees and non-bargaining unit employees.

The Supreme Court has stated that "the auditing powers of a benefit plan are limited to prudent actions furthering the legitimate purposes of the plan."[5] *Central States,* 472 U.S. 559, 582, 105 S.Ct. 2833, 2846, 86 L.Ed.2d 447 (1985). In *Central States* the Supreme Court upheld as "prudent" the funds' request to audit the records of all the defendant's employees, including those employees the defendant contended were not covered by the CBAs. The Court agreed with the funds' argument that "records of not-concededly-covered employees are 'pertinent records' because their examination is a 'proper' means of verifying that the employer has accurately determined the class of cov-

ered employees." *Central States,* 472 U.S. at 566, 105 S.Ct. at 2838.

Defendants here seek to limit the scope of the audit to only those employees that they claim are covered by the CBAs. "However, if the defendant[s] were able to select those employees [they] determined met this criteria, [defendants], like the defendant in *Central States,* would have an incentive to underreport the number of employees covered, and possibly reduce [their] liability under the plan." *New York State Teamsters Council Health and Hospital Fund v. Silverline Constr., Inc.,* No. 89–CV–66, 1989 WL 145013, at *3 (N.D.N.Y. Nov. 30, 1989) (McCurn, C.J.); *see also Williams v. New York State Teamsters Conference Pension & Retirement Fund,* No. 83–CV–251C, 1991 U.S. Dist. LEXIS 20132 (W.D.N.Y. Dec. 23, 1991). Therefore, the Court finds that defendants must submit all their payroll records for the requested audit.

■ Nonetheless, the audit should not be wholly unbridled. Because a fund's "right to demand access to employer records does not reach beyond what is appropriate for the proper administration of the plan[s], ... a court ordering an employer to comply with a particular audit demand could, upon a proper showing by the employer, limit the auditors accordingly." *Central States,* 472 U.S. at 582 n. 23, 105 S.Ct. at 2846 n. 23. Thus, in *Central States* the Court noted that the plaintiff funds "agreed to various limits on [their] audit." *Id.* In *Vertex* the court appointed a special master to oversee the audit

---

3. Because the Court finds that the Plaintiff Fund is entitled to audit defendants' records as a matter of law, we need not address plaintiff's argument that ERISA, 29 U.S.C. § 1059 grants it the right to conduct the requested audit.

4. The Court finds that the requested audit in this case is an audit of defendants' payroll records from November 1977 to the present. Even though the complaint does not limit the time frame of the requested audit, the defendants have submitted records indicating that the Plaintiff Fund seeks to audit all of the payroll records dating back to November 1977. *See* D'Ablemont Aff. ¶ 1, Ex. C and G. The plaintiff has not provided any information indicating that it seeks records dated earlier than 1977, and thus the Court's analysis is confined to an audit of defendants' payroll records dating from 1977 to the present.

5. The Supreme Court has also stated that "the audit request would be illegitimate under the [trustees'] standard of loyalty if it were actually an effort by plan trustees to expand coverage beyond the class defined in the plans' terms or to acquire information about employers to advance union goals." *Central States,* 472 U.S. at 570 n. 12, 105 S.Ct. at 2840 n. 12. The defendants here submit no evidence of such an intent, and therefore the Plaintiff Fund's stated purposes must be believed. *See* Plf.'s Mem. at 3 (The purpose of the audit is to "verify[] that required pension contributions are made upon all eligible and appropriate employees, ... ensure that the [Plaintiff] Fund is properly funded and further ensure that all eligible employees are credited with the correct contributions toward the accumulation of pension credits.").

and protect the employer's privacy rights. *Plumbers and Steamfitters Local No. 150 Pension Fund v. Vertex Constr. Co.*, 932 F.2d 1443, 1452 (11th Cir.1991). Because the parties have not specifically addressed this matter in their papers, the Court will allow the defendants to bring, if necessary and proper, motions for a protective order to deal with issues of privacy and confidentiality. *See, e.g., DeMarco v. C & L Masonry, Inc.*, 891 F.2d 1236, 1240 (6th Cir.1989).

## III. ATTORNEYS' FEES AND COSTS

■■■ The Plaintiff Fund seeks an award of attorneys' fees and costs under ERISA, 29 U.S.C. § 1132(g)(1), based on defendants' failure to submit to the audit. The purpose of such an award is "to vindicat[e] retirement rights, even when small amounts are involved." *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 872 (2d Cir.1987). The Court has discretion whether to grant such an award. *Mendez v. Teachers Ins. and Annuity Assoc.*, 982 F.2d 783, 788 (2d Cir.1992). The decision to grant attorneys' fees and costs is based on five factors: "(1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorneys' fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants." *Chambless*, 815 F.2d at 871 (citations omitted).

■■■ Neither party addressed these factors; nevertheless, the Court finds that attorneys' fees are unwarranted. While the defendants may have the ability to pay an award and the action will confer a benefit on a group of participants, the other factors do not weigh in plaintiff's favor. There is no evidence that defendants refused the audit in bad faith. The law in this area was unsettled and defendants' position was not wholly without merit. Further, it appears that other employers acting under similar circumstances would benefit more from clearer contractual obligations and settled case law than from the imposition of sanctions in this case.

Therefore plaintiff's request for attorneys' fees and costs is denied.

Therefore, it is hereby

ORDERED that actions 91–CV–324 and 92–CV–569 are CONSOLIDATED; and it is further

ORDERED that plaintiff's motion for summary judgment is GRANTED; and it is further

ORDERED that defendants submit their payroll records for the requested audit; and it is further

ORDERED that, if necessary and proper, defendants may apply for a protective order; and it is further

ORDERED that plaintiff's request for attorneys' fees and costs is DENIED.

**IT IS SO ORDERED.**