**SANTA MONICA CULINARY WELFARE FUND; Charles A. Conine; Victor Valenzuela, Plaintiffs–Appellants,**

v.

**MIRAMAR HOTEL CORPORATION, Defendant–Appellee.**

No. 89–55455.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 7, 1990.

Decided Dec. 12, 1990.

Henry M. Willis (Claude Cazzulino, on brief), Schwartz, Steinsapir, Dohrmann & Sommers, Los Angeles, Cal., for plaintiffs-appellants.

Gerald M. Siegel, Santa Monica, Cal., for defendant-appellee.

Before HUG, BOOCHEVER and BEEZER, Circuit Judges.

HUG, Circuit Judge:

This action arises from a request by the Santa Monica Culinary Welfare Fund (the "Fund") to audit the payroll records of the Miramar Hotel Corporation ("Miramar"), a contributing employer to the Fund. Miramar refused to submit to an audit, claiming that under the collective bargaining agreement its only duty to the Fund was to make the agreed upon contributions. The district court agreed with Miramar and refused the Fund's request. Because we find that the Fund had the right to audit Miramar's payroll records, we reverse.

## I.

The appellants in this action are the Santa Monica Culinary Welfare Fund and two of its trustees, Charles A. Conine and Victor Valenzuela (the "Trustees"). The Fund is a multiemployer employee benefit plan governed by section 302(c)(5) of the Labor Management Relations Act, 1947, 29 U.S.C. § 186(c)(5), and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, as amended (1988). The Fund was created by Local 814 of the Hotel Employees and Restaurants Employees' Union ("the Union") for the benefit of designated employees.

As required under ERISA, the Fund was established pursuant to a written Trust Agreement. The Trust Agreement authorizes the Fund "at any time" to question both the sufficiency and accuracy of employer contributions. The Trust Agreement further authorizes the Fund to "from time to time" audit the records of employers.

From August 1, 1978 through August 1, 1983, the Union and Miramar were parties to a collective bargaining agreement which required Miramar to make contributions to the Fund on behalf of certain Union-represented employees. The agreement also contained a provision adopting the terms of the Trust Agreement that established the Fund.

A second collective bargaining agreement between the Union and Miramar went into effect August 2, 1983 through July 31, 1988. Like the first agreement, this agreement also established that Miramar would contribute a set amount to the Fund. However, unlike the first agreement, the second collective bargaining agreement did not specifically incorporate the terms of the Trust Agreement. After specifying the amount of contributions Miramar was required to make to the Fund, the collective bargaining agreement contained the following clause:

The foregoing is the extent of any and all of employer's obligations to the Santa Monica Culinary Welfare Fund, and otherwise under this Article.

The collective bargaining agreement is silent on the rights and duties of the Fund's Trustees.

While the second collective bargaining agreement was in effect, an auditor selected by the Trustees sought to audit the payroll records of Miramar. Like many other employee trust funds, the Fund relies on the employer's self-reporting and conducts periodic audits to ensure the employer's compliance with its contributing obligations. The Fund's decision to have an audit conducted was part of its program to ensure Miramar's compliance with its obligations to contribute to the Fund.

Miramar refused to schedule an audit. The Fund brought an action to compel the audit and seek any delinquent contributions. The district court denied the Fund's request. This appeal followed.[1] We reverse.

## II.

■ We review *de novo* the construction of collective bargaining agreements and employee benefit plans. *Operating Engineers Pension Trusts v. B & E Backhoe, Inc.*, 911 F.2d 1347, 1351 (9th Cir.1990).

## III.

Miramar maintains that the Fund is without the power to audit because the collective bargaining agreement between it and the Union failed to incorporate the terms of the Trust Agreement. The Fund contends that ERISA gives it the right to audit Miramar's records even though the collective bargaining agreement does not expressly authorize the Fund to audit Miramar's records. We do not decide whether ERISA confers upon the Fund the right to audit because the Trust Agreement gives the Fund the right to audit Miramar's records, despite the fact that the collective bargaining agreement is silent on the issue.

---

1. The district court originally granted summary judgment for Miramar on the Fund's audit claim and dismissed the Fund's collection claim without prejudice. After the Fund timely appealed from this order, its appeal was dismissed without prejudice because it was premature. In an amended judgment, the district court then certified the audit claim pursuant to Fed.R. Civ.P. 54(b), but made no mention of the claim for unpaid contributions.

■ ERISA requires that employee benefit plans such as the one here be established as written formal trusts. 29 U.S.C. § 1103 (1988). *See also NLRB v. Amax Coal Co.*, 453 U.S. 322, 329, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981). The Trust Agreement in this case gives the Fund the right to conduct an audit of employer records. Under section 404(a)(1)(D) of ERISA, the trustees of an employee benefit plan are required to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter or subchapter III of this chapter." 29 U.S.C. § 1104(a)(1)(D) (1988). Therefore, the role of the trustees is generally defined by the trust documents, to the extent these documents are consistent with the provisions of ERISA. *Central States Pension Fund v. Central Transp., Inc.*, 472 U.S. 559, 568, 105 S.Ct. 2833, 2839, 86 L.Ed.2d 447 (1985). *See also Retirement Fund Trust v. Franchise Tax Bd.*, 909 F.2d 1266, 1280 (9th Cir.1990); *Board of Trustees of the Watsonville Frozen Food Welfare Trust Fund v. California Coop. Creamery*, 877 F.2d 1415, 1420 (9th Cir.1989).

■ Here, the Trust Agreement establishing the Fund contemplates that employers who contribute to the Fund are bound by the terms of the Trust Agreement. In defining the term "Employer," Art. II, Section 2.01(6) of the Trust Agreement states:

The term "Employer" means the Employer signatory hereto ... and such other employers who, by contract with the Union, have agreed to be bound by the terms of this Trust Agreement *and* to make contributions to the Fund equal to and on the same basis and under the same conditions as those required to be made by the employers signatory hereto.

Miramar argues that certification under Rule 54(b) was improper and that we are therefore without jurisdiction to hear this appeal. Miramar's argument is meritless. Two distinct claims were alleged, one of which is certified under Rule 54(b). Even if we were to consider the other claim as having been dismissed with prejudice, we would have jurisdiction over the district court's final judgment under 28 U.S.C. § 1291.

(Emphasis added). The Trust Agreement further provides that an "Employee" is

> Any person within the jurisdiction of the Union employed by an Employer bound by this Agreement, covered by a collective bargaining agreement between his or her Employer and the Union.

Further, Article IX of the Trust Agreement authorizes only the Fund's Trustees to amend the Trust Agreement.

These provisions make it clear that when establishing the Fund, the Trustees intended that employer and employee participants were bound by the terms of the Trust Agreement. While Miramar is not a signatory to the Trust Agreement, it is undisputed that it contributed to the Fund and intended its employees to receive the benefits from the Fund. Miramar would not make contributions if it did not intend its employees to receive benefits from the Fund.

If Miramar's employees are participants in the Fund, then it necessarily follows that Miramar is an employer under the Trust Agreement. Miramar cannot have it both ways. The Trust Agreement contemplates that contributing employers be either signatories or contributors under a collective bargaining agreement and be bound to the terms of the Trust Agreement. Miramar and its employees cannot receive the benefits of the Fund yet escape its attendant burdens, in this case, the provision of the Trust Agreement permitting the Trustees to audit an employer's books and records.

Miramar maintains that the provision of the collective bargaining agreement specifying that the "foregoing is the extent of any and all of employer's obligations" to the Fund means that Miramar need only contribute to the Fund and should not be required to submit to the requested audit. We disagree.

First, the precise meaning of this provision is unclear. The provision simply states that the "foregoing" is the extent of Miramar's obligations. The provision does not expressly disaffirm the Trust Agreement. Moreover, the provision is silent on the rights and powers of the Trustees to audit Miramar's records.

"Where a contract's meaning is not clear on its face, its interpretation depends upon the parties' intent at the time it was executed." *Laborers Health & Welfare Trust Fund v. Kaufman & Broad of N. California, Inc.*, 707 F.2d 412, 418 (9th Cir.1983). Here, the only relevant evidence submitted was a declaration from Miramar's president stating that the second collective bargaining agreement was "negotiated." This evidence does not assist our interpretation of this provision.

Normally, the intent of the parties in this situation is an issue for the trier of fact. *Id.* However, we need not remand for this purpose. There is no contention that Miramar agreed to make significant contributions to the Fund but did not intend its employees to be covered thereunder. It is clear that by making contributions to the Fund, Miramar intended its employees to receive benefits from the Fund. Once Miramar intended its employees to be covered by the Fund, the Trust Agreement governing the Fund requires Miramar to be bound to its terms.

The Trust Agreement gives the Trustees the right to audit an employer's books and records. The Supreme Court has made clear that the trust documents, if consistent with the ERISA statute, govern the scope of the trustees' rights and duties. *Central States*, 472 U.S. at 568, 105 S.Ct. at 2839. If the provision at issue is read as interfering with the Fund's right to audit Miramar's books, we would be altering the trust documents. Such a holding is contrary to Supreme Court and circuit authority stressing the independent relationship between a trust fund, an employer, and a union. *See Central States*, 472 U.S. at 575–77, 105 S.Ct. at 2842–43 (a trust fund need not rely on a union to monitor employer contributions); *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 370–76, 104 S.Ct. 1844, 1848–51, 80 L.Ed.2d 366 (1984) (outlining the differing interests between a union, employer, and trust fund within the context of arbitration); *Amax*, 453 U.S. at 329, 101 S.Ct. at 2794 ("a trustee bears an unwavering duty of complete loyalty to the beneficiary of the trust, to

the exclusion of the interests of all other parties"); *Hawkins v. Bennett*, 704 F.2d 1157, 1159 (9th Cir.1983) ("The trust fund is independent of the collective bargaining agreement between the parties.").

This authority makes it clear that neither an employer nor a union, singly or together, can alter the terms of a trust instrument such as the one involved in this case unless the power to do so was reserved when the trust was created or properly amended. *Sinai Hosp. of Baltimore, Inc. v. National Benefit Fund for Hosp. & Health Care Employees*, 697 F.2d 562, 567 (4th Cir.1982) (citing *NLRB v. Driver Salesmen*, 670 F.2d 855 (9th Cir.1982)). No such power was reserved in the Trust Agreement, and it has not been so amended.

■ Miramar's final contention is that a random audit is impermissible because there is no contractual right to audit, no claim for contributions, no alleged breach of a collective bargaining agreement, nor any other cause which would give rise to a random audit. This argument does not alter our conclusion.

We have already held that the Trustees' right to audit in this case is established by the Trust Agreement when, as here, the employer contributes to the Fund with the intent that its employees receive the Fund's benefits. The fact that the Trustees have no existing claim for contribution, nor any information that Miramar may not have made the required contributions is not an obstacle to the Trustees' right to audit in this case. In *Central States*, 472 U.S. at 581, 105 S.Ct. at 2845, the Court held that the trustees had the right to audit, even though the trustees had neither a claim for delinquent contributions, nor did they allege that the employer breached its obligation to contribute.

Miramar cites to the circuit opinion reversed by the Court in *Central States* to support its proposition that the Fund must show some type of cause before auditing its records. *See Central States Pension Fund v. Central Transp., Inc.*, 698 F.2d 802 (6th Cir.1983), *rev'd*, 472 U.S. 559, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985). Because the Sixth Circuit noted that the Fund's request to audit was triggered by "instances of apparent underreporting," Miramar maintains that the Fund in this case must show similar triggering events to support its audit request. *Id.* at 805. Miramar missed the point made by the Supreme Court.

In reversing this opinion, the Court addressed the Fund's audit request as part of a system of *"random* audits of the records of participating employers." *Central States*, 472 U.S. at 563, 105 S.Ct. at 2836 (emphasis added). The Court further noted that the audit was "part of a program of 'periodic reviews of participating employer contributions for the benefit of Plan Participants and their Beneficiaries.'" *Id.* (citation omitted). This is the same justification given by the Fund here. The Court in *Central States* stressed that no such triggering event is required—this is the point of Section IV of that opinion. *Id.* at 574–81, 105 S.Ct. at 2842–45.

## IV.

■ The Fund asks for attorneys' fees. 29 U.S.C. § 1132(g)(1) (1988) authorizes the award of fees in the Court's discretion. *Smith v. Retirement Fund Trust of Plumbing*, 857 F.2d 587, 592 (9th Cir.1988). Our discretion is guided by the following factors, among others:

(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir.1980).

There is no indication that Miramar is incapable of satisfying an award of fees. Moreover, the Fund brought this case to "benefit all participants and beneficiaries

of an ERISA plan" and "to resolve a significant legal question regarding ERISA." *Id.* These two factors militate in favor of awarding the Fund fees. Nevertheless, we decline to do so. The Fund does not claim that Miramar's refusal to submit to an audit was done in bad faith. In addition, Miramar's conduct was not of the sort that requires us to deter others from acting similarly in the future. Finally, Miramar's position that it need not submit to an audit because the collective bargaining agreement was silent, although ultimately unsuccessful, was not untenable. Under these circumstances, we decline to award the Fund fees and costs.

## V.

The Trust Agreement gives the Trustees the right to audit a contributing employer's records. Miramar is a contributing employer, and the Fund has the right to audit Miramar's payroll records. We make no award of attorneys' fees.

REVERSED.

BEEZER, Circuit Judge, dissenting:

I do not think an employer is bound by the terms of the Trust Agreement if it only makes contributions on behalf of its employees. Under the trust instrument, "employers" include those "who, by contract with the Union, have agreed to be bound by the terms of this Trust Agreement and to make contributions to the Fund." Thus, employers must both make contributions *and* agree to be bound by the terms of the Trust Agreement. Here, the collective bargaining agreement contains no reference which binds the employer to the audit terms of the Trust Agreement. Because Miramar never agreed to be bound by the terms of the Trust Agreement "by contract with the Union" it is not required to submit to an audit.