Joseph JASPAN, Robert A. Sasso, Michael Carbone, Andrew Boggia, Jack Dee, Alfred Finkel, Theodore King, Chester Browman, John Quadrozzi, as Trustees and Fiduciaries of the Local 282 Welfare, Pension and Annuity Trust Funds, Plaintiffs–Appellants,

v.

GLOVER BOTTLED GAS CORPORA-TION, and Synergy Gas Corporation, Defendants–Appellees.

No. 84, Docket 95-7137.

United States Court of Appeals, Second Circuit.

Argued Oct. 6, 1995.

Decided March 18, 1996.

Eugene S. Friedman, New York City (William Anspach, Friedman, Levy & Warren, New York City, of counsel), for Plaintiffs–Appellants.

Elliot J. Mandel, Jericho, NY (Thomas J. Bianco and Carmelo Grimaldi, Kaufman, Nanes, Schneider & Rosensweig, Jericho, NY, of counsel), for Defendants–Appellees.

Before WINTER, JACOBS, and LEVAL, Circuit Judges.

LEVAL, Circuit Judge:

This appeal arises out of a suit by the Trustees and Fiduciaries of the Local 282 Welfare, Pension, and Annuity Trust Funds (the "Funds") against Glover Bottled Gas Corporation (now known as Synergy Gas Corporation) ("Glover"). The complaint

seeks to compel Glover to produce its books and records for audit. In the course of litigation, the Funds asserted in motion papers that they were also entitled, under the terms of the trust agreement governing the Funds, to monetary relief in the amount of 50% of Glover's contributions, by reason of Glover's failure to keep records. The district court awarded judgment to the Funds on their claim to compel the production of Glover's records, but denied monetary relief. The Funds appeal the latter part of the district court's decision. We affirm.

### Background

The Funds are employee benefit plans as defined by the Employment Retirement Income Security Act of 1975 ("ERISA" or "the Act"), 29 U.S.C. § 1001 *et seq.* *See* 29 U.S.C. § 1002(3). They provide retirement, health, and other benefits to the employees of various employers who make contributions to the Funds pursuant to collective bargaining agreements with Building Material Teamsters Local 282 ("Local 282"). The Funds are administered in accordance with ERISA and the terms of an Agreement and Declaration of Trust (the "Trust Agreement").

Glover signed collective bargaining agreements with Local 282, covering the period from March 1977 through July 1982, under which it agreed to make contributions to the Funds for the benefit of its employees. Pursuant to the collective bargaining agreements, Glover submitted, together with its contributions, monthly remittance reports stating the hours worked by covered employees and, correspondingly, the amount Glover owed in contributions to the Funds.

In accordance with ERISA, the Funds periodically conduct audits of participating employers to ensure that their contributions meet the terms set forth in the collective bargaining agreements.[1] As early as 1978, the Funds disputed whether Glover had made contributions in accordance with its obligations and whether Glover should be considered bound by the terms of the Trust Agreement, which Glover had never signed.

In 1978, the Funds sued Glover in the New York Supreme Court for Nassau County, seeking contributions allegedly due to the Funds and reformation of Glover's collective bargaining agreement to provide that Glover would be bound by the terms of the Trust Agreement. The suit was settled and discontinued.

In June 1985, the Funds initiated this lawsuit under provisions of ERISA, 29 U.S.C. § 1132(a)(3), and the Labor Management Relations Act, 29 U.S.C. § 185, to compel Glover to produce its records for audit. A. 299. The complaint did not include any allegation of underpayment of contributions. *See* 29 U.S.C. § 1145. Discovery and various pretrial proceedings were conducted before a magistrate judge through 1986.

On November 11, 1988, the Funds moved for summary judgment, seeking to compel Glover to produce its records. In response, Glover claimed that the relevant records no longer existed and that, as a result, the Funds' action was moot. In their Reply Memorandum, the Funds asserted that Glover's loss of the documents did not render the action moot because "the Funds have also requested and intend to seek other equitable relief in the form of approximate underpayments and the Funds' costs and reasonable attorneys' fees...." The Reply Memorandum stated that "A Finding of Liability Is Relevant to the Funds' Claim for Approximate Underpayments." It explained that Section 1132(a)(3)(B) of ERISA provides that a court may award "other appropriate equitable relief" to redress violations of the Act, that the loss of Glover's payroll records prevented the Funds from correctly determining the amount of Glover's underpayments, and that the governing Trust Agreement provided a remedy by setting the total contributions due from an employer who fails to produce records for audit at 50% above the amount of contributions reported. Accordingly, the Funds argued that their motion for judgment on the claim to compel Glover to produce its documents was not moot, regardless of Glover's inability to pro-

---

1. ERISA provides that "every employer shall ... maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees." 29 U.S.C. § 1059(a)(1). *See also id.* at §§ 1023(a)(3)(A), 1023(b)(2).

duce, because "it is a prerequisite to providing the Funds equitable relief in the form of approximate damages of an additional 50% of the reported contributions."

The Funds, however, had never pleaded a claim for unpaid contributions, had never pleaded their entitlement under the Trust Agreement to the 50% supplement, and, indeed, had never mentioned this alleged entitlement in the litigation prior to their Reply Memorandum on their motion for summary judgment. Accordingly, Glover had not had an opportunity to reply to this contention when the district court convened on December 16, 1988, to rule on the motion. Glover's papers before the court, therefore, did not include argument to the effect that (a) Glover was not a signatory to the Trust Agreement and (b) the action did not involve a claim for unpaid contributions. The district judge, who had read the motion papers, opened the conference advising Glover that it was liable for the 50% payment. After brief further discussion, the judge stated he would grant summary judgment, including the 50% penalty, but delay entry for 30 days to give Glover a last opportunity to find the records.

In early January 1989, Glover submitted a motion for reargument. In this motion, Glover asserted that the Funds had never claimed entitlement to the 50% supplement by pleadings or otherwise until the filing of its Reply Memorandum on its motion for summary judgment, that Glover was neither a party nor a covered employer under the terms of the Trust Agreement, that the sole penalty under ERISA for failure to maintain records was a provision in 29 U.S.C. § 1059 for a civil penalty of $10 per employee payable to the Secretary of Labor, and that no penalty should be imposed in view of the non-willful nature of Glover's failure to produce.

A few days later, Glover informed the district court that it had found some of the records thought to be missing. The court granted a further stay pending an audit of the records by the Funds. The Funds contend that they were unable to complete the audit because Glover failed to produce records for 51 of 71 months in question, and because some of the records it provided contained material omissions. The Funds' auditor concluded that Glover owed $25,717.67 for the 20 months for which records were produced. Still, the Funds did not amend their complaint to plead a claim for unpaid contributions for those 20 months, or, by extrapolation, for the entire 71 months.

The parties submitted additional briefing to the court primarily addressing the liability of a non-signatory contributing employer for the remedies specified in a trust agreement. The court also requested and received further briefing on the question whether the penalty provided by 29 U.S.C. § 1059 was exclusive of other remedies.

On January 5, 1995, the district court ruled that the Funds were entitled to judgment in their action to compel production of Glover's records, but that, in a suit for violation of recordkeeping requirements, the court had no authority to award "damages" of 50% of reported contributions, as provided in the Trust Agreement, against one who was not a party to that Agreement.

The Funds appealed from the court's failure to award monetary relief in the amount of 50% of contributions.

### Discussion

On appeal, the Funds contend that (1) Glover was bound by the terms of the Trust Agreement to pay 50% of its contributions by reason of its failure to produce its records, and (2) even if it was not so bound through the Trust Agreement, the court should have awarded the 50% penalty, exercising its power to grant equitable relief under ERISA, 29 U.S.C. § 1132(a)(3)(B). We are not persuaded by either argument.

■ Glover was not a party to the Trust Agreement. Had the parties intended to bind Glover to its terms, they could easily have done so by having Glover sign the Agreement or by referencing it in the collective bargaining agreements. It is true, Glover had agreed through the collective bargaining agreements to pay contributions to the Funds. But this does not justify holding Glover to the terms of a liquidated damages provision of a trust agreement that it never joined in.

The Funds point to decisions in other circuits, which have held non-signatory contributing employers to terms of trust agreements governing the fund to which they contributed. *Plumbers & Steamfitters Local 150 v. Vertex Constr. Co.*, 932 F.2d 1443 (11th Cir.1991); *Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491 (9th Cir.1990).[2] These cases held that an employer, which was bound by its collective bargaining agreement to contribute to a benefit fund but had not signed or agreed to be bound by the trust documents, was nonetheless responsible for an obligation imposed on contributing employers by the trust agreement. *Vertex*, 932 F.2d at 1450; *Miramar*, 920 F.2d at 1493–94. Although the *Vertex* and *Miramar* opinions used broad language that would cover this case, (*e.g.*, "We fail to see how [the employer] can avail itself of the benefits of the [f]unds without being subjected to the rules that govern them." *Vertex*, 932 F.2d at 1451), both courts justified their rulings by pointing to factors not present here. The provision of the trust agreement which those courts enforced against the non-signatory employer was the right of the fund trustees to audit the employer's records. Fund trustees have a fundamental duty to locate and take control of fund property—a duty for which the right to audit is crucial. *Vertex*, 932 F.2d at 1450–51; *see also Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 571–72, 105 S.Ct. 2833, 2840–41, 86 L.Ed.2d 447 (1985).

Here, in contrast, the Funds are seeking to enforce a liquidated damages provision. Such a provision may be helpful to the trustees, but it is not essential to their management of the Funds in the same way as is the right to audit to make sure contributing employers have contributed in accordance with

their obligations.[3] Despite the broad language in their opinions, we have no confidence that the Ninth and Eleventh Circuits would have held a non-signatory contributing employer liable had the trust provision in question been, as here, one for liquidated damages—a provision of far less importance to the fund trustees' performance of their duties than their right to audit, and one which raises far greater concerns regarding the fairness of imposing contract liability on a non-signatory.

The court in *Vertex* also relied in part on the fact that the trust agreement at issue expressly purported to cover any employer who, pursuant to a collective bargaining agreement, contributed to the fund, "whether or not any such contributing Employer has signed this [trust] Agreement. . . ." *Vertex*, 932 F.2d at 1446. Thus an employer who examined the *Vertex* trust agreement before undertaking the obligation to contribute under the collective bargaining agreement might arguably understand that the obligations of the collective bargaining agreement implicated the obligations of the trust agreement. Here, in contrast, had Glover examined the Trust Agreement, it would have understood it was not bound by the obligations set forth, for the Agreement defines an obligated employer as one who

has duly executed a collective bargaining agreement with the Union *and who is a signatory to this agreement*, and also any employer not presently a party to such collective bargaining agreement, who hereafter executes such agreement provided that such employer satisfies the requirements for participation as established by the Trustees *and agrees to be bound by the terms and provisions of this Agreement*

---

**2.** Plaintiffs also cite *Malden Mills Industries, Inc. v. Alman*, 971 F.2d 768, 776 (1st Cir.1992). However, as we read this decision, the court merely recited the Eleventh Circuit's holding in *Vertex* as part of its explanation of the plaintiff-fund's contentions, without passing on the issue.

**3.** Indeed, the funds in *Vertex* and *Miramar* may have been entitled to this relief under ERISA, regardless of the terms of the trust agreement. *See* 29 U.S.C. § 1059(a) (recordkeeping and reporting requirement); 29 U.S.C. § 1001(b) (gen-

eral disclosure requirement); *see also Central States*, 472 U.S. at 571, 105 S.Ct. at 2840–41 ("ERISA clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled. . . ."); *Combs v. King*, 764 F.2d 818, 822–23 (11th Cir.1985) ("The legislative history of ERISA demonstrates that it was enacted, at least in part, to increase the information and data available to participants. . . . Obviously, employers were to play integral roles in the disclosure process.").

*and Declaration of Trust, and becomes party hereto.*

(Emphasis added). As Glover was neither a "signatory" nor one who "agrees to be bound by the terms and provisions of [the Trust] Agreement," the terms of the Trust Agreement apparently excluded it from coverage. Thus, were we to follow *Vertex* and hold that Glover, by undertaking in the collective bargaining agreement to pay contributions to the Funds, had bound itself to the provisions of the Trust Agreement governing the Funds, it would be arguable that Glover was expressly exempted from obligation by this provision of the Trust Agreement.

We conclude in any event that, by undertaking in a collective bargaining agreement to pay contributions to certain benefit funds, Glover did not bind itself to a liquidated damages provision contained in a governing trust agreement to which it never agreed.

We also reject the Funds' second argument—that the court erred in its refusal to award the 50% relief the Funds were seeking under its power to grant "appropriate equitable relief" pursuant to 29 U.S.C. § 1132(a)(3)(B).

First, this was not a suit for unpaid contributions. The only allegation pleaded by the Funds was Glover's failure to submit its books for audit; the only specific prayer for relief was for "An Order directing [Glover] to present its relevant books and records to the Funds' auditor for examination." We express no view as to whether, *in a suit for unpaid contributions,* ERISA's provision for "appropriate equitable relief" would authorize an award of 50% of contributions, or other liquidated damages, paid in the nature of restitution.[4]

Second, although 29 U.S.C. § 1132(a)(3)(B) entitles fund trustees to "appropriate equitable relief" if an employer violates ERISA's recordkeeping requirement, 29 U.S.C. § 1059, the Funds made no request for any specific form of monetary equitable relief other than the 50% penalty provided by the Trust Agreement (which would have been an arbitrary and inappropriate remedy on these facts). We therefore find the district court's denial of the Funds' requested relief altogether appropriate.

*Conclusion*

The judgment of the district court is affirmed.

---

**4.** *See Mertens v. Hewitt Assocs.,* 508 U.S. 248, 255–58, 113 S.Ct. 2063, 2068–69, 124 L.Ed.2d 161 (1993) (noting that restitution may be an appropriate equitable remedy in an ERISA case); *Schwartz v. Gregori,* 45 F.3d 1017, 1022 (6th Cir.) (characterizing employer's payment of back pay as a form of restitution), *cert. denied,* —— U.S. ——, 116 S.Ct. 77, 133 L.Ed.2d 36 (1995); *Howe v. Varity Corp.,* 36 F.3d 746, 756 (8th Cir.1994) (holding that lost pension benefits could be recovered in equitable restitution action because this was "money that plaintiffs would have received"), *cert. granted,* —— U.S. ——, 115 S.Ct. 1792, 131 L.Ed.2d 720 (1995); *Gulf Life Ins. Co. v. Arnold,* 809 F.2d 1520, 1523 (11th Cir.1987)

(noting that an action to enforce ERISA's "appropriate equitable relief" provision "means an action to compel someone to do something ..., such as make contributions, that ERISA or the plan requires be done."); *Trustees of the Building Services 32B–J Pension, Health & Annuity Funds v. Linden Realty Assocs.,* 1995 WL 302454 *5 (E.D.N.Y.1995) ("[A]n employee benefit fund can recover moneys owed to it by an employer according to the equitable remed[y] of restitution...."); *Aetna Life Ins. Co. v. John Hancock Mutual Life Ins. Co.,* 1994 WL 494780 (N.D.Ill. 1994) (holding that plaintiffs attempting to enforce payment under terms of plan sought restitution).