**Arthur T. CASTANEDA, et al., Plaintiffs,**

v.

**Rick J. BALDAN, et al., Defendants.**

**No. 94CV1940 BTM(RBB).**

United States District Court,
S.D. California.

Jan. 14, 1997.

John T. DeCarlo, Daniel J. Hall, Enrique Gutierrez, DeCarlo Connor & Selvo, Los Angeles, CA, for Plaintiffs.

Robert W. Bell, Jr., Amy T. Wintersheimer, Gray, Cary, Ware & Freidenrich, San Diego, CA, for Robert E. Winterton.

Michael M. Djavaherian, Law Offices of Michael M. Djavaherian, San Diego, CA, for the Associated Builders and Contractors of San Diego, Inc. Prevailing Wage Pension Plan for Rick J. Baldan, Baldan Construction.

## ORDER CLARIFYING ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND SETTING PRETRIAL CONFERENCE AND TRIAL DATES

MOSKOWITZ, District Judge.

### BACKGROUND

Plaintiffs in this action brought suit under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.,* against their former employer, defendant Rick J. Baldan, an individual dba Baldan

Construction, for wrongfully withholding contributions to an employee pension plan. The plaintiffs also sued Robert E. Winterton, Executive Vice President of the Associated Builders and Contractors of San Diego, Inc., and The Associated Builders and Contractors of San Diego, Inc. Prevailing Wage Pension Plan for Rick J. Baldan dba Baldan Construction (the "Baldan Plan"), an employee pension plan within the meaning of 29 U.S.C. § 1002(2)(A).

The complaint was filed on December 30, 1994. Winterton and the Baldan Plan filed answers to the complaint. Baldan never filed a response to the complaint, and a default was entered against him on March 24, 1995. On November 1, 1995, Winterton filed a third-party complaint for indemnity against The Epler Company, a benefits and actuarial consulting firm who had acted as administrators, consultants, and advisors to the Associated Builders and Contractors and the Baldan Plan. Winterton claimed he relied upon the knowledge, legal advice, and expertise of Epler to advise him concerning the Baldan Plan and that all the allegations raised by plaintiffs arose out of actions, or failure to take actions, which were recommended by Epler. On November 20, 1995, a Stipulation and Order was filed dismissing Epler and barring future claims against Epler and The Grant Nelson Group, which had also performed consulting work relating to the Baldan Plan. The Order further stated that "the effect, if any, of the settlement ... on ... Winterton's liability will be determined at a later date." Stipulation and Order Re: Good Faith Settlement at 5–6. This settlement resulted in the full payment to the plaintiffs of the actual losses to the Baldan Plan as a result of Baldan's failure to make contributions. *See* Transcript of Hearing on Mar. 11, 1996, at 3–4.

On March 11, 1996, this Court denied cross-motions for summary judgment. On May 22, 1996, the Court denied the plaintiffs' second motion for summary judgment, indicating that a further order would be issued to clarify what duties a plan administrator and fiduciary has with regards to a pension plan.

## DISCUSSION

### I. The Court's Prior Holdings on the Motions for Summary Judgment

#### A. The Duties to Make Reasonable Collection Efforts and Notify Beneficiaries

On the parties' cross-motions for summary judgment, the Court found that a plan administrator and fiduciary has a "duty to take reasonable steps to ensure collection" *see* Transcript of Hearing on Mar. 11, 1996, at 36, and if he has decided not to seek collection of contributions owed to the plan, "he has a duty to notify [plan beneficiaries] that he finds it not in the best interest of the plan to incur the expenses to seek the contribution" *id.* at 37. *See Central States, Southeast & Southwest Areas, Pension Fund v. Central Transp., Inc.,* 472 U.S. 559, 571–72, 105 S.Ct. 2833, 2840–41, 86 L.Ed.2d 447 (1985) ("ERISA clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries...."); *Diduck v. Kaszycki & Sons Contractors, Inc.,* 874 F.2d 912, 916 (2d Cir. 1989) (same); *see also* 29 U.S.C. § 1104(a)(1)(A) (plan fiduciary "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... for the exclusive purpose of providing benefits to participants and their beneficiaries"). Having defined Winterton's fiduciary duty in this regard, however, the Court denied the cross-motions finding that there is a material dispute of fact whether Winterton acted reasonably in not taking any action to collect delinquent contributions from Baldan. At trial, the Court as fact-finder will resolve the factual disputes and the ultimate question of whether Winterton's actions demonstrate the "care, skill, prudence, and diligence" that the law requires of fiduciaries, 29 U.S.C. § 1104(a)(1)(B).

#### B. The Baldan Plan Was Not a Multiemployer Plan

The Court's finding that the Baldan Plan was not a multiemployer plan, *see* Transcript of Hearing on May 22, 1996, at 24–25, has no

significance in the context of Winterton's duty as plan administrator and fiduciary to make reasonable collection efforts. While *Central States* and its progeny have typically involved multiemployer plans, *see Central States*, 472 U.S. at 565, 105 S.Ct. at 2837–38; *Diduck*, 874 F.2d at 913–15; *Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491, 1492 (9th Cir.1990), in reaching its holding the *Central States* Court relied not on whether or not the plan was "multiemployer," but on the common law of trusts and the language of ERISA, 29 U.S.C. § 1104(a)(1)(A). *See Central States*, 472 U.S. at 570–72, 105 S.Ct. at 2840–41. Thus, the logic of *Central States* is applicable to this case, regardless of whether the plan at issue was multiemployer or not. *Cf. Chambers v. Kaleidoscope, Inc. Profit Sharing Plan and Trust*, 650 F.Supp. 359, 377 (N.D.Ga.1986) (finding single-employer plan administrators breached fiduciary duties by "failing to protect ... plan assets or to ensure that the plan received the money contributed by the company").

## II. The Duty to Reasonably Investigate Alternatives for Recovering Overdue Contributions

■ The first dispute as to the reasonableness of Winterton's actions relates to whether Winterton had sufficient knowledge in deciding not to seek collection from Baldan. The plaintiffs argue that Winterton's reliance on Baldan's representations that he was insolvent was unreasonable because, had Winterton undertaken an investigation, he would have found ample evidence that Baldan was capable of making payments to the Plan. Winterton responds, of course, that it was reasonable for him to rely on that representation and that the fact that the plaintiffs have never been able to recover the delinquent contributions from Baldan shows the soundness of his appraisal of Baldan's insolvency.

While the *Central States* Court did not reach the issue of whether a trustee had the fiduciary duty to investigate the amenability to suit of a delinquent employer, such an obligation might fairly be read into the decision. For example, the Court noted that "[t]he Act also requires that a benefit plan prevent participant employers from gaining even temporary use of assets to which the plan is entitled [...,] a requirement that would certainly create a trustee responsibility for assuring full and prompt collection of contributions owed to a plan." *Central States*, 472 U.S. at 572–73, 105 S.Ct. at 2841 (citation & footnote omitted). The Court also noted the trustee's fiduciary duty "to gain immediate use of trust assets for the benefit of the trust" and "to avoid unfunded liabilities that might eventually prove uncollectible as a result of insolvencies." *Id.* at 580, 105 S.Ct. at 2845.

The Second Circuit has read a duty to investigate amenability to suit into the *Central States* decision and ERISA In *Diduck*, the court held that a trustee's fiduciary duty to ensure that a plan receives the funds to which it is entitled can be satisfied in many ways, "including suing the delinquent employer, randomly auditing the employer's records, threatening work stoppages, picketing the employer, or similar actions—depending upon the circumstances. There is no duty to take any particular course of action if another approach seems preferable." *Diduck*, 874 F.2d at 917 (citations omitted). The court found that the trustees had acted prudently in declining to sue an insolvent employer because "[t]he evidence supports this decision." *Id.* ("ERISA contains no requirement that the Trustees expend Fund assets to bring a lawsuit against an insolvent employer.") (internal quotation marks omitted). The court also found, however, that the trustees had breached their fiduciary duty by "failing even to investigate the possibility of suing" the developer who had hired the insolvent employer and who was making substantial payments to keep the employer operating. *Id.* at 918. The court noted that it was not suggesting a duty to sue the developer, but, "in light of the role [the developer] had assumed, the Trustees had a duty to investigate the possibility of a lawsuit and make an informed decision whether or not to pursue that action." *Id.* (footnote omitted).

■ While the Ninth Circuit has not expressly adopted the *Diduck* reading of *Central States*, that reading comports with the

intent behind the ERISA statute. Accordingly, the Court adopts the rule that as part of their fiduciary duty to make reasonable collection efforts, plan administrators must make a reasonable investigation and decision as to whether to initiate legal action to recover plan assets, such as delinquent contributions. Applying this rule to the present action, the Court cannot say that Winterton failed that duty as a matter of law. The *Diduck* court found that the trustees had not violated their duty when they declined to sue an employer they knew to be insolvent and judgment-proof; it was only the failure to consider suing the solvent contractor that violated their fiduciary duty. Here, Winterton was informed that Baldan was no longer capable of making payments to the Baldan Plan. Thus, his decision not to pursue legal action was, to some extent, informed, and it may have been a waste of Plan assets to have brought suit against Baldan. Whether the decision not to pursue legal action was reasonable, given that Baldan himself was the source of the information, is a question for the trier of fact.

### III. Winterton Had the Power, but not an Independent Duty, to Audit Baldan's Records

■ As part of their argument that a trustee has a duty to investigate the possibility of recovering delinquent contributions through legal action, the plaintiffs also argue that Winterton had a duty to audit Baldan's financial records. The plaintiffs are mistaken in this assertion. Although the trend has been to increase the scope of both the duties and the powers of plan trustees, the consensus of authority remains that plan trustees may, in certain circumstances, have the authority to conduct an audit of an employer. Because the cases find only a limited authority to audit an employer's financial records, they necessarily imply that a trustee does not have the duty to audit in every case.

Typically, the authority to audit is found in the trust agreement itself. For example, the *Central States* Court was at pains to note that its decision established only that the power to audit given by trust documents was not inconsistent with ERISA. The Court

wrote that "we do not hold that under ERISA a benefit plan's interests in fully identifying participants and beneficiaries require that it conduct the sort of audit in question," and "we have no occasion to determine whether ERISA would independently confer on the trustees a right to perform the sort of audit demanded in this case in the face of trust documents that explicitly limit the audit powers of trustees." *Central States*, 472 U.S. at 581, 105 S.Ct. at 2846 (citation omitted). There is some ambiguity in the latter statement as one could read the passage to imply that, if the trust documents make no mention of the power to audit at all, the trustees will be empowered to audit as part of their ERISA rights and duties. Three Justices, concurring in part and dissenting in part, sensed the ambiguity and acted to clarify the issue, writing that "the right to conduct an audit of the kind involved in this case must be granted by contract; it is not conferred by ERISA itself." *Id.* at 583, 105 S.Ct. at 2846 (Stevens, J.).

When the Ninth Circuit confronted a similar situation, it showed similar restraint. In *Santa Monica Culinary Welfare Fund*, the court held that an employer that was party to a collective bargaining agreement and made contributions to a multiemployer pension plan was required to submit to an audit when the trust agreement, to which it was not a signatory, explicitly permitted the trustees to audit the employer's books and records. *Santa Monica Culinary Welfare Fund*, 920 F.2d at 1493–94; *see also Plumbers and Steamfitters Local No. 150 Pension Fund v. Vertex Constr. Co.*, 932 F.2d 1443, 1450 (11th Cir.1991) (finding employer who made contributions pursuant to collective bargaining agreement bound to submit to audit expressly contemplated by trust agreement, despite fact that collective bargaining agreement did not incorporate trust agreement). The Ninth Circuit noted that "[w]e do not decide whether ERISA confers upon the Fund the right to audit because the Trust Agreement gives the Fund the right to audit [the employer]'s records, despite the fact that the collective bargaining agreement is silent on the issue ." *Santa Monica Culinary Welfare Fund*, 920 F.2d at 1493.

One recent opinion from the Second Circuit, *New York State Teamsters Conference Pension & Retirement Fund v. Boening Bros., Inc.*, 92 F.3d 127 (2d Cir.1996), goes further. Expanding upon the rule of *Central States*, the court held that "since the Trust Agreement makes no specific reference to audits, we believe that *Central States'* discussion of an ERISA trustee's duties suggests that an employer audit may be conducted by ERISA trustees so long as that audit is 'necessary or appropriate to carry out the purposes of the trust and [is] not forbidden by the terms of the trust.' Restatement [(Second) of Trusts § 164 (1959)]." *Id.* at 132–33. Thus, the Second Circuit would now appear to hold that ERISA empowers employer audits so long as the trust agreement "does not limit or preclude an audit of [the employer]'s employment records" *id.* at 132, and the plan trustee does not overreach in exercising the power to audit, *see id.* at 133–34.

While the *Boening* court's discussion of the common law of trusts would seem to assign both the power to audit and the duty, the Ninth Circuit's decision in *Santa Monica Culinary Welfare Fund*, while it does not prohibit following the Second Circuit's lead, counsels caution in extending a fiduciary's duties this far. In addition, the pension plan and trust agreement under which Winterton served as plan administrator expressly contemplated that the "Fiduciaries shall have only those specific powers, duties, responsibilities and obligations as are specifically given under the Plan." Gutierrez Dec., Ex. 1, at § 10.1.A. Parties to a pension plan and trust agreement may not contract out of their fiduciary duties under ERISA, *Central States*, 472 U.S. at 568, 105 S.Ct. at 2839, but the Court is mindful of a trustee's "common law and ERISA duties to abide 'by the terms of the trust.' Restatement § 164(a)." *Boening Bros.*, 92 F.3d at 132. In view of these competing considerations, the Court finds that, in the absence of a provision in the trust agreement prohibiting him from auditing Baldan's records, Winterton had the power to do so. The Court does not find, however, that Winterton had an independent duty to conduct such an audit, unless the finder of fact were to conclude that the circumstances

in early 1994 rendered an audit necessary to fulfill his duty to make reasonable collection efforts.

## IV. Whether Baldan's Contributions Were Delinquent Is a Disputed Issue of Material Fact

■ A third point of contention between the parties involves the date on which Baldan's payments to the Plan became delinquent. Winterton argues that as the Baldan Plan makes contributions due only eight and one-half months after the close of the plan year, *see* Gutierrez Decl., Ex. 1, at § 4.1.C, the contributions for November and December 1993 were not delinquent until August 15, 1994. Thus, he could not have breached a duty to make collection efforts until that time. The plaintiffs contend that the practice of the parties and parole evidence established that payments were due monthly, and thus, as Baldan's payments were delinquent in early 1994, Winterton breached his duty as of that date.

The Court finds that there is a disputed issue of fact as to whether the parties had modified the date set by the trust and pension plan agreement on which payments were due to the Plan. Thus, at this stage of the proceedings the Court cannot find at what time those payments became delinquent. The Court notes, however, that even if the Court were to find that the terms of the Plan control and Baldan's contributions were not due until August, Winterton still may have had a duty to investigate and take appropriate actions if a reasonably prudent person would have taken such affirmative actions. If the parties' course of conduct reveals that employers under the Associated Builders and Contractors form plan made their contributions monthly, as the plaintiffs suggest, then regardless of the legal due date for contributions, there would have been reason for Winterton to have been concerned about Baldan's failure to make plan contributions in November and December 1993. Thus, the date on which Baldan will be found to have been legally delinquent in his payments will not necessarily control the trier of fact's determination of whether Winterton breached his fiduciary duties.

*V.  The Duty to Take Reasonable Actions to Remedy Another Fiduciary's Breach*

Under ERISA, a fiduciary to a plan is liable for the breach of another fiduciary if the first has failed in his own fiduciary duties, enabling the "other fiduciary to commit a breach," 29 U.S.C. § 1105(a)(2), or "has knowledge of a breach by such other fiduciary, unless [the first one] makes reasonable efforts under the circumstances to remedy the breach," *id.* § 1105(a)(3).  The Baldan Plan itself recognizes that fiduciaries may not immunize themselves from these potential liabilities.  *See* Gutierrez Decl., Ex. 1, at § 10.1.G (stating that intention of Plan was to make each fiduciary not "responsible for the acts or omissions of any other Fiduciary or person except as provided by Section 405(a) of ERISA").  Thus, if Winterton is found to have failed to make reasonable collection efforts such that Baldan was enabled to further breach his duties to the plaintiffs, or if Winterton, with knowledge of Baldan's breach, is found to have failed to make reasonable efforts to remedy that breach, then section 1105(a) would provide another means by which to find Winterton liable to the plaintiffs.

*VI.  The Duty Not to Engage in Prohibited Transactions Under Section 1106*

■  Under 29 U.S.C. § 1106(a)(1), a fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect ... (D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."  Plaintiffs argue that by failing to collect contributions owed by Baldan, Winterton in effect made an extension of credit on behalf of the Plan.  In support of this position, they cite Prohibited Transaction Exemption 76–1, 41 Fed.Reg. 12740 (1976), which states that "if the plan is not making systematic, reasonable and diligent efforts to collect delinquent contributions, or the failure to collect is the result of an arrangement, agreement or understanding, express or implied, between the plan and the delinquent employer, such failure to collect may be deemed to be a prohibited transaction."  *Id.* at 12741.  Exemptions were given for exten-

sions of time for contributions, agreements to accept less than full contributions, and agreements to write off such contributions as uncollectible if, generally speaking, the plan has made "reasonable, diligent, and systematic efforts as are appropriate under the circumstances to collect such contribution," and the agreement between the plan and employer is reasonable and reduced to writing.  *See id.* at 12742.

The defendant argues that this gloss on prohibited transactions applies only to multiemployers or multiple employers, which for purposes of the exemption are both defined as "a plan—(i) to which more than one employer is required to contribute, [and] (ii) which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer," 29 U.S.C. § 1002(37)(A).  *See* 41 Fed.Reg. at 12742.  While, on a narrow view, the defendant is correct that the exemption applies specifically to multiemployer and multiple employer plans as defined in 29 U.S.C. § 1002, the conclusion that the defendant reaches is contrary to logic.  That certain exemptions should be established which apply only to multiemployer plans does not then limit the obligation not to engage in prohibited transactions only to fiduciaries of those sorts of plans, and nothing in the language of 29 U.S.C. § 1106(a) suggests such a limitation.

On the other hand, the transaction exemption is not an authoritative reading of the duties imposed by section 1106, and this Court finds that if the provision on prohibited transactions were to apply to Winterton, it would only be because of a breach of the duty to make reasonable collection efforts.  That is, the Court doubts whether section 1106 was intended to apply to situations such as that in the instant case where there was no "transaction" to speak of, but only a potential breach of fiduciary duty.  It may be that breach of the fiduciary duty to make reasonable collection efforts constitutes a transaction which allows use of plan assets by an employer, but this is a pained interpretation of the statute, and one for which neither the plaintiffs nor the Court have been able to locate relevant authority.  In addi-

tion, given that the Court has already found that Winterton had a duty to make "reasonable" collection efforts, the Court does not perceive any need to strain to find a duty to make "systematic" and "diligent" collection efforts as well. If a reasonably prudent trustee would have made systematic and diligent efforts, then Winterton will be held to that standard.

### CONCLUSION

For the foregoing reasons, the Court HOLDS that a plan administrator and fiduciary: (1) has a duty to make reasonable collection efforts; (2) has a duty to give notice to participants of an employer's failure to pay and his own decision not to incur expenses to seek contribution; (3) has a duty to make reasonable investigation of alternatives for recovering delinquent contributions; (4) has the power, but not an independent duty, to audit an employer's records if necessary to discharge the previous duties; and (5) has a duty to take reasonable actions to remedy another fiduciary's breach once aware of that breach. The Court FINDS that there is a disputed issue of fact as to when Baldan's contributions became delinquent and that the plaintiffs have not alleged facts which would allow them to proceed under 29 U.S.C. § 1106, which prohibits a fiduciary from engaging in certain transactions, independently of their claims for breach of the duties detailed above.

Finally, the Court ORDERS that a pretrial conference be set on calendar for January 30, 1997, at 4:30 p.m., and that trial be set to begin on February 19, 1997, at 9 a.m., both to be held in Courtroom 15 of the United States Courthouse, San Diego, CA.

**IT IS SO ORDERED.**