MEMORANDUM *
Northwest Administrators, Inc. (“Northwest”) appeals the summary judgment in favor of San Bruno Garbage Co., Inc. (“San Bruno”) in Northwest’s action pursuant to § 502 of ERISA and § 301 of the *918 National Labor Relations Act, alleging that San Bruno breached a collective bargaining agreement (“CBA”) by failing to make pension contributions to the Western Conference of Teamsters Pension Trust Fund (“Trust”) on behalf of employees receiving workers’ compensation. Northwest filed suit in its capacity as the administrator and assignee of the Trust. We affirm.
As a preliminary matter, the Trust’s interpretation of the CBA is not entitled to any deference or evidentiary value. The construction of the CBA is a question of law that we review de novo. Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp., 920 F.2d 1491, 1493 (9th Cir.1990).
To ascertain the meaning of a CBA, we first examine its express written terms. Northwest Adm’rs, Inc. v. B.V. & B.R., Inc., 813 F.2d 223, 225 (9th Cir.1987). The CBA does not require San Bruno to pay pension contributions on behalf of employees being paid under workers’ compensation laws. San Bruno must make pension contributions for employees’ “straight-time hours worked” and “com-pensable hours.” Although the CBA does not define “compensable hours,” the relevant provisions indicate that the term refers to wage hours paid by San Bruno to employees, whether or not the employees are at work. There is no evidence that San Bruno paid workers’ compensation directly to its employees by “self-insuring,” or that workers’ compensation payments were calculated on the basis of wage hours. Finally, the record does not support Northwest’s argument that the introductory paragraph of Article C, Section 4 of the CBA creates an entitlement to pension contributions for employees being paid under workers’ compensation laws.
Even if the CBA were ambiguous, the extrinsic evidence submitted by Northwest does not create a genuine issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Operating Eng’rs Pension Trusts v. B & E Backhoe, Inc., 911 F.2d 1347, 1352 (9th Cir.1990). The Declaration of Robert Morales, the union’s principal negotiator for the CBA, indicates he intended for San Bruno to make pension contributions for time when employees receive workers’ compensation. Viewing Morales’s statement in the light most favorable to Northwest, there is still no evidence that he communicated his alleged intent to San Bruno or that anyone from San Bruno was aware of his intention. See Northwest Adm’rs, Inc. v. Albertson’s, Inc., 104 F.3d 253, 256 (9th Cir.1996).
“Gaps [in CBAs] may be left to be filled in by reference to the practices of the particular industry and of the various shops covered by the agreement.” United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 580, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The Morales Declaration refers to similar contract language in one other CBA, Northwest’s contract with San Francisco Nor-Cal (“NorCal”). NorCal is San Bruno’s parent company. Morales asserts that the NorCal CBA requires the employer to provide pension credits for employees receiving workers’ compensation. Morales alleges that he expected that San Bruno employees would receive a similar pension contribution. Yet Northwest introduced no concrete evidence showing that NorCal actually makes such contributions, or that the NorCal CBA has similar language to Section 4(b) of the San Bruno CBA. Likewise, even if roughly 11% of the Western Conference of Teamsters Pension Plan participants are covered by CBAs that require employers to make pension contributions for periods of workers’ compensation, Northwest provides no evidence that those other CBAs require such contribu *919 tions through language comparable to Section 4(b).
AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.