In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 19-1051 and 18-3703

ELECTRICAL CONSTRUCTION INDUSTRY
PREFUNDING CREDIT REIMBURSEMENT
PROGRAM, *et al.*,

*Plaintiffs-Appellants,*
*Cross-Appellees,*

*v.*

VETERANS ELECTRIC, LLC,

*Defendant-Appellee,*
*Cross-Appellant,*

Appeals from the United States District Court for the
Eastern District of Wisconsin.
No. 2:17-cv-01576-NJ — **Nancy Joseph**, *Magistrate Judge.*

SUBMITTED SEPTEMBER 4, 2019 — DECIDED OCTOBER 24, 2019

Before WOOD, *Chief Judge,* and BAUER and HAMILTON,
*Circuit Judges.*

BAUER, *Circuit Judge.*  The International Brotherhood of Electrical Workers, AFL-CIO Local 494 and the Electrical Contractors Association Milwaukee Chapter, N.E.C.A., Inc. ("NECA"), entered into a collective bargaining agreement ("CBA") providing health, welfare, and pension benefits for union workers. The Electrical Construction Industry Prefunding Credit Reimbursement Program, a/k/a Electrical Construction Industry Health & Welfare Plan, Electrical Construction Industry Annuity Plan, Electrical Construction Industry Pension Plan, Milwaukee Electrical Joint Apprenticeship & Training Trust Fund, and Electrical Construction Industry Vacation – Holiday Plan (the "Funds") operate as trusts for these benefits. Veterans Electric, LLC ("Veterans") participated in NECA, assented to the CBA, and contributed to the Funds for its union employees. The CBA makes multiple references to the Funds and details an audit policy.

The Employee Retirement Income Security Act of 1974 ("ERISA") governs benefit plans between labor unions and multiemployer associations. As association members, employers agree to be bound by the CBA. Unions set up trust agreements, which set out the terms for benefit plans for union employees. Trustees may demand and examine pertinent employer records to effectively administer the trust. Signatory employers self-report benefit payments owed under the CBA.

On May 4, 2017, the Funds attempted to audit Veterans' payroll records and Veterans only provided records for union employees. This payroll information accounted for about half of the total reported wages. Due to the discrepancy, the Funds requested payroll information for non-union employees. Veterans refused, contending that the records were outside the

scope of a proper audit under the CBA. The Funds were unable to complete the audit and initiated litigation. During discovery, Veterans provided the additional payroll information.

The district court granted summary judgment in favor of Veterans, limiting the scope of the trustees' audit authority. For the following reasons, we reverse.

## DISCUSSION

We review the district court's grant of summary judgment *de novo*, construing all factual disputes and reasonable inferences in favor of the nonmovant. *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 933 F.3d 806, 806 (7th Cir. 2019). Summary judgment is appropriate when the movant has shown there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Prior to the merits, we first address Veterans' argument that once it furnished the payroll records to the Funds in discovery, and the Funds dismissed the original fraud charges, this case became moot. Rather than being moot, there exists a live dispute between the parties over attorney's fees. A fee award under ERISA, 29 U.S.C. § 1132(g), requires at least "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)); *see also Pakovich v. Verizon Ltd. Plan,* 653 F.3d 488, 494 (7th Cir. 2011). Here, Veterans complied with the Funds' request for pertinent audit information after not only the threat, but the reality, of litigation. Because the Funds' right to pursue attorney's fees

remains cognizable, this appeal remains ripe for adjudication and we move to the merits.

The Supreme Court discussed this issue in *Cent. States, Southeast & Southwest Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559 (1985), where an employer refused to share non-union employee payroll information with the union trustees. Union trustees relied on employers, multiemployer association participants that are signatory to a CBA, to self-report the extent of liability. *Id.* at 561. Unions police employer self-reporting through random audits. *Id.* Certain employers refused to produce "payroll, tax, and other personnel records" of non-union employees for audit purposes. *Id*.

The Supreme Court held that the "audit requested by [the trustees was] well within the authority of the trustees as outlined in the trust documents." *Id.* at 581. The trustees have the "*right* to conduct this particular kind of audit, [but it is] not their *duty* to do so." *Ibid.* (emphasis in original). In particular, "the trust documents included a number of provisions that are highly supportive of the right to audit by [the] trustees." *Id.* at 565. Furthermore, "an examination of the duties of plan trustees under ERISA, and under the common law of trusts upon which ERISA's duties are based, makes clear that the requested audit is highly relevant to legitimate trustee concerns." *Id.* at 569.

> ERISA clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries, and that trustees will take steps to identify all partici-

>pants and beneficiaries so that the trustees can make them aware of their status and rights under the trust's terms.

*Id.* at 571–72.

The Ninth and Eleventh Circuits also accordingly held that benefit-plan trust agreements are sufficient to provide a right of audit even if a CBA is silent, and that a CBA cannot restrict fund trustees' audit rights. *Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491, 1493–95 (9th Cir. 1990) and *Plumbers and Steamfitters Local No. 150 Pension Fund v. Vertex Constr. Co.*, 932 F.2d 1443, 1450–52 (11th Cir. 1991).

Here, as part of a multiemployer association, Veterans became a signatory employer and bound to these Trust Agreements. Certain sections of these agreements explicitly bind the employer to provide relevant information in connection with administering the Funds "as deemed necessary by the Trustees" and give authority to the Trustees to "seek appropriate legal, equitable and administrative relief." The Trust Agreements give the trustees the right to audit and are referenced multiple times throughout the CBA. One provision of the CBA specifically states:

>The Employer shall promptly furnish to the authorized certified public accountant auditors employed by the Trustees of any fringe benefit fund, on demand, all necessary employment, personnel or payroll records, and these records only, relating to its former and present employees covered by this Agreement, including any relevant information that may be required in

> connection with the administration of the fringe benefit fund, for their examination, whenever such examination is deemed necessary by the Trustees.

CBA Section 14.05.

Even if the Trust Agreements were not referenced throughout the CBA, the CBA further states that:

> The Employer's obligation, under this Agreement, to make payments and contributions to fringe benefit funds for all employees covered by this Agreement, applies to all employees regardless of membership or non-membership in the Union.

CBA Section 14.02.

The CBA's language did not limit the trustees' authority to audit the payroll records under the contract terms. Rather, the CBA intended to include "all employees regardless of membership or non-membership in the Union." Therefore, we disagree with a narrow reading of "contributions to the funds for employees 'covered under this agreement'" as limiting the Funds' ability to audit all employees.

In light of the fiduciary duties imposed by ERISA on union trustees and the authority provided by the Trust Agreements, the Funds had the right to conduct random audits on employer payroll records. "A benefit plan must primarily rely on union monitoring of an employer's compliance with its trust obligations." *Central States*, 472 U.S. at 577 (citing *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364 (1984)). Here, Veterans,

through its membership in the multiemployer association, became signatory to the CBA and bound to its terms. The CBA incorporates by reference these Trust Agreements throughout. The Trust Agreements authorized the trustees to conduct random audits to ensure the employer made the proper payments. Therefore, the requested audit was within the authority of the trustees.

We find the Funds may pursue an award of attorney's fees under the CBA § 14.06 or other sources of law. However, we reject Veterans' cross-appeal seeking its own attorney's fees.

## CONCLUSION

For the foregoing reasons, we REVERSE the district court's grant of summary judgment and REMAND for further ruling by the district court consistent with the views expressed herein.