Robert Bezio, FLOYD MIKLIC, Plaintiff,

against
General Electric Company, JEFFREY IMMELT, JEFFREY BORNSTEIN, JAN HAUSER, FIDELITY MANAGEMENT TRUST COMPANY, JOHN DOES 1-5, Defendant.


653132/2018

Plaintiffs Gainey, McKenna & Egleston (by Thomas J. McKenna and Gregory M. Egleston)
440 Park Avenue South, 5th Fl. 
New York, NY 10016
Defendants (General Electric Company, J. Immelt, J. Bornstein and J. Hauser)
Weil Gotshal & Manges, LLP (by Greg A. Danilow, Stephen A. Radin, Sean Moloney, and Evert J. Christensen)
767 Fifth Avenue
New York, NY 10153


Andrew Borrok, J.

The following e-filed documents, listed by NYSCEF document number (Motion 002) 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 48, 49 were read on this motion to/for DISMISS.
The critical issue which dooms the plaintiffs' case is whether the beneficiaries of a trust established pursuant to the Employment Retirement Savings Plan Act of 1974 (ERISA) must make a demand on the trustee or adequately plead demand futility in order to maintain a derivative action. Because this court answers this question in the affirmative and the plaintiffs have failed to do so, the defendants' motion to dismiss pursuant to CPLR § 3211(a)(5) is granted and the action is dismissed without prejudice, except as otherwise provided below. 
THE RELEVANT FACTS AND CIRCUMSTANCES
Reference is made to (i) a General Electric Company (GE) Retirement Plan (the Retirement Plan) which allows GE employees to accumulate and invest retirement savings through investment funds offered by the Retirement Plan, and (ii) an ERISA trust (the Retirement Trust) established by GE pursuant to a certain Trust Agreement (the Trust Agreement), dated as of December 1, 2009, between the Trustees of the GE Savings and Security Program (the GE Asset Management Committee or GEAM Committee), a Named Fiduciary of the GE Savings and Security Program (excluding the portion of the Program that consists of U.S. Savings Bonds purchased with participant after-tax contributions made on or after July 1, 1995) (the Plan), and Fidelity Management Trust Company, a Massachusetts trust company, having an office at 82 Devonshire Street, Boston, MA 02109 (the Trustee), pursuant to which GE employees could beneficially invest in GE common stock by acquiring units in the Retirement Trust, which Retirement Trust owns, among other things, GE stock (NYSCEF Doc. No. 34 [the Trust Agreement]). To be clear, each participant in the Retirement Plan would own units in the Retirement Trust, not actual GE stock (Danilow Affirm., Ex. C, NYSCEF Doc. No. 32, § VI[B] [the Retirement Plan]).
The introductory paragraph of the Trust Agreement makes clear that GE executed the Trust Agreement solely to facilitate the Retirement Plan, but without assuming responsibility for the management of the Retirement Trust corpus:
[GE is] the sponsor of the Plan but does not have any responsibility of the custody, management or investment of the Plan's assets. The Sponsor has executed this Agreement solely in order to signify its agreement to undertake the non-fiduciary obligations that the terms of this Agreement impose on the plan sponsor (including, but not limited to, the obligation to make the interest-free loans described in Schedule B of this Agreement, and to make certain acknowledgements and representations
(Danilow Affirm., Ex. E, NYSCEF Doc. No. 34, p. 1).
Further, the assets of the Retirement Trust are managed by the Trustee for the benefit of its participants and beneficiaries. The Trustee, however, is not responsible for the buy/sell decision of any plan participant, and the Trustee is not liable for any loss or [*2]expense that arises from the directions of the plan participants with respect to the same. To wit, Section 5 of the Trust Agreement, "Investment of Trust Assets," expressly provides:
(e) Stock Fund.
* * *
(ii) No Fiduciary Duty.
The Plan requires that the Stock Fund be offered as an investment option. As a result, neither the Trustee nor any other plan fiduciary is responsible pursuant to the Plan or this Agreement to monitor the suitability of acquiring and holding Sponsor Stock. Neither the Trustee nor any other plan fiduciary shall be liable for any loss or expense that arises from the directions of the Participations with respect to the acquisition and holding of Sponsor Stock
(id., § 5[e][ii] [emphasis added]).
In addition, Section 5(j) of the Trust Agreement, "Trustee Powers," makes clear that the Trustee has the right to commence lawsuits and to represent the Trust in all suits and legal and administrative hearings:
The Trustee shall have the powers and authority set forth in subparagraphs (i) through (viii) of this Section 5(j). Except as otherwise required by law or expressly provided in this Agreement, the Trustee shall exercise its powers and authority under this Agreement only at the prior direction of a Participant, Named Fiduciary or Outside Manager, or as required by the Plan or provisions of this Agreement other than this Section 5(j).
* * *
(v) To settle, compromise, or submit to arbitration any claims, debts, or damages due to or arising from the Trust; to commence or defend suits or legal or administrative proceedings; to represent the Trust in all suits and legal and administrative hearings; and to pay all reasonable expenses arising from any such action, from the Trust if not paid by the Sponsor.
* * *
(viii) To do all other acts, although not specifically mentioned herein, as the Trustee may reasonably deem necessary to carry out any of the foregoing powers and the purposes of the Trust (id., §§ 5[j], 5[j][v], 5[j][viii] [emphasis added]).
The plaintiffs are participants in, and the beneficiaries of, the Retirement Plan who bring this lawsuit against the Trustee, GE, and its former Chairman Jeffrey R. Immelt, its former Chief Financial Officer Jeffrey S. Bornstein, and its former Vice President, Controller and Chief Accounting Officer Jan R. Hauser, alleging claims under Section 11 of the Securities Act of 1933 (the 1933 Act), derivatively on behalf of the Retirement Trust, and arising out of the Retirement Trust's purchase of GE Common Stock in connection with the issuance by the Retirement Trust of GE Common Stock Fund units owned by the plaintiffs (Amend. Compl., ¶¶ 1, 407). The plaintiffs allege that the defendants caused the filing of a Registration Statement, which pursuant to [*3]amended SEC Rule 430B (hereinafter, Rule 430B) discussed more fully below, incorporated a subsequently signed amended prospectus pursuant to which GE made "made materially false and misleading statements regarding its business, as well as its operational and compliance policies," and
failed to disclose that: (i) it was failing to make meaningful adjustments to its insurance actuarial assumptions; (ii) this resulted in inadequate insurance reserves being maintained in accordance with Generally Accepted Accounting Practices ("GAAP"), which caused billions in unreported impairment charges for GE; (iii) its Power and Oil & Gas segments, among others, were knowingly underperforming; (iv) consequently, the value of GE was overstated during the Relevant Period [of February 26, 2013 and January 24, 2018] and additional undisclosed impairments were necessary; and (iv) as a result of the foregoing, its public statements were materially false and misleading at all relevant times
(Amend. Compl., ¶¶ 6-7).
The defendants now move pursuant to CPLR § 3211(a)(5) arguing that dismissal is required because (i) the plaintiffs do not have standing to proceed because they never made a pre-suit demand on the trustees and they otherwise have not adequately pled that the demand would have been futile, (ii) the plaintiffs, as plan beneficiaries, cannot in any event bring a Section 11 claim derivatively or otherwise under Section 11 of the 1933 Act, and (iii) with respect to the individual defendants, the claims are time barred. 
It is undisputed that the plaintiffs never made a demand on the Trustee of the Retirement Plan to bring this action. Rather, the plaintiffs allege that:
406. Demand on the Trustee of the Plan to bring this action is not required. In the alternative, if demand on the Trustee is required, demand is futile as the Trustee of the Plan is a named party in this derivative action. Further, the Trustee is conflicted as it would not sue its employer — GE. Therefore, demand on the Trustee is futile.
(Amend. Compl., ¶ 406).
With respect to the applicable law, the Retirement Plan provides:
Any question concerning or in respect of the validity, construction, interpretation, administration and effect of the Trust, the Plan, the Funds, and of its rules and regulations, and the rights of any or all persons having or claiming to have an interest therein or thereunder, shall be governed exclusively, and solely in accordance with the laws of the State of New York and, where applicable, the Employee Retirement Income Security Act of 1974
(Danilow Affirm., Ex. C, NYSCEF Doc. No. 32, § XX).
Subsequent to filing the complaint, pursuant to a Stipulation of Dismissal dated March 8, 2019, the plaintiffs have voluntarily discontinued this lawsuit with prejudice as against the Trustee (NYSCEF Doc. No. 46).
DISCUSSION
[*4]I. Plaintiffs cannot maintain this derivative action on behalf of the Retirement Plan because they did not make a pre-suit demand.
Under ERISA, "all assets of an employee benefit plan shall be held in trust by one or more trustees" (ERISA § 403[a], 29 USC § 1103[a]). As indicated above, here, the Retirement Plan's assets are held by the Retirement Trust, which is governed by New York law and, where applicable, ERISA (NYSCEF Doc. No. 33, § XX). It is well-settled law in New York that:
the same pleading standard should be applied to derivative actions brought by beneficiaries on behalf of a trust as applies to derivative actions brought by stockholders on behalf of corporations and by limited partners on behalf of the partnership, i.e., the complaint must set forth "with particularity" the efforts of the plaintiffs to secure the initiation of the action by the trustees, or the reasons for not making such effort
(Velez v Feinstein, 87 AD2d 309, 316 [1st Dept 1982]; see also BCL § 626[c]).
In Velez, a union welfare trust fund brought a derivative action based on allegations (i) that the fund's insurance companies and insurance advisors charged the fund excessive premiums, commissions and fees, (ii) that the union improperly allocated joint expenses as against the fund, and (iii) that the trustees acquiesced and actively participated in this misconduct. The complaint sought to remove the trustees and appoint an interim receiver. The First Department explained that, "[i]n an action brought by a beneficiary on behalf of the trust, the beneficiary must show why he has the right to exercise the power, which the law and the trust agreement in the first instance confide in the trustees, to bring a suit on behalf of the trust" (id. at 315). This generally requires either (1) a showing of a demand on the trustee to bring the suit and a refusal by the trustee that is "so unjustifiable as to constitute an abuse of the trustee's discretion," or (2) a "showing that a suit should be brought and that because of the trustee['s] conflict of interest, or some other reason, it is futile to make such a demand" (id.). The court in Velez held that in the case of the latter, demand futility must be pled with the same particularity required for stockholders' derivative actions under BCL § 626(c) (Velez, 87 AD2d at 316). 
Under BCL § 626(c), the complaint "shall set forth with particularity the efforts of the plaintiff to secure the initiation of such action by the board or the reasons for not making such effort." This is, in effect, a heightened pleading standard. The court in Velez found that the complaint sufficiently pled demand futility where the trustees under the trust agreement were appointed by the union and could be removed and replaced at will by the union's executive board: "such control excuses demand on the trustees to sue the union that appoints and can at will remove them" (Velez, 87 AD2d at 317).
Here, as an initial matter, the plaintiffs do not allege that they made a demand on the Trustee to assert a Section 11 claim on behalf of the Retirement Plan (Amend. Compl., ¶ 406). As indicated above, it is undisputed that they did not. Rather, they argue that a demand on the Trustee is not required because this action is governed by the 1933 Act and not "by ERISA (or trust law)" as they are alleging that the defendants violated Section 11 of the 1933 Act, and not alleging any claims for breach of fiduciary [*5]duty under ERISA (Ptf. Opp. Memo., NYSCEF Doc. No. 48, p. 13). In support of this extraordinary proposition, the plaintiffs rely on In re Tyco Intl. Ltd. Multidistrict Litig. (2004 WL 2903889 [D NH Dec 2, 2004]). Their reliance is, however, misplaced. The issue is not whether there may be a claim under Section 11. The issue is whether a plan participant, as a beneficiary under a trust, must first make a demand on the trust to bring a suit or adequately plead demand futility. For the reasons discussed below, the answer is yes, absent authorization to the contrary (e.g., as otherwise set forth in 29 USC § 1132[a]), a trust beneficiary must first make a demand or adequately plead demand futility.
In re Tyco was an action brought by participants in a retirement plan that was sponsored by Tyco International (U.S.) Inc. (Tyco) who asserted claims under ERISA against Tyco and its various officers and affiliates for breach of fiduciary duty. More specifically, the Tyco plaintiffs claimed (i) that Tyco failed to provide retirement plan participants with complete and accurate material information about the company, its accounting and corporate governance as well as its stock fund, and (ii) that Tyco offered its stock fund as an investment option and permitted the retirement plan to invest in it despite having knowledge that the stock fund was an imprudent investment. The Tyco plaintiffs asserted that Tyco acted in a fiduciary capacity "when it disseminated SEC Form S—8s and Section 10(a) prospectuses that incorporated by reference other allegedly misleading SEC documents" (2004 WL 2903889 at *5). The court in In re Tyco found that, "[w]hether Tyco International acted in a fiduciary capacity when it disseminated Form S—8s and Section 10(a) prospectuses depends upon whether it engaged in plan 'management' or 'administration' when it disseminated the documents" (id. at *6). The court held that Tyco "was acting solely as an issuer of stock rather than a fiduciary when it disseminated the [Form S-8 and Section 10(a)] documents" (id.). In other words, a corporation that makes a filing required under the federal securities laws does not become an ERISA fiduciary on that ground alone. In dicta, however, upon which the plaintiffs now rely, the court commented:
there is little evidence in the legislative history of either the Securities Act, which is the source of the disclosure requirements, or ERISA to support the view that an issuer of stock necessarily assumes fiduciary responsibilities in complying with its obligations under the securities laws if it chooses to allow its employees to invest in its stock as part of an individual account plan. Although plaintiffs plainly had a right to expect that Tyco International would refrain from making material misstatements in its SEC filings, that expectation must be enforced under the securities laws rather than ERISA.
(2004 WL 2903889 at *6; see Def. Opp. Brief, NYSCEF Doc. No. 48, p. 13).
The plaintiffs argue that the court's comment that the Tyco plaintiffs' "expectation" that Tyco would "refrain from making material misstatements in its SEC filings must be enforced under the securities laws rather than ERISA," ipso facto means that the Tyco plaintiffs had the right to assert a securities claim without making a demand on the trustees or requiring the trustees to bring the claim on their behalf and, therefore, the plaintiffs in this action necessarily do as well. The plaintiffs read far too much into the [*6]dicta in In re Tyco and urge this court to adopt a broader reading of the dicta than either trust or ERISA jurisprudence would permit. 
As an initial matter and as noted, the issue on this motion is not whether there is any claim under Section 11 of the 1933 Act, but whether the plaintiffs needed to make a demand on the trust to assert such claim or adequately plead demand futility in order to assert the Section 11 claim without such demand having been made. In re Tyco offers nothing in the way of support for the proposition that demand on the trustees need not be made or demand futility need not be adequately pled simply because of the nature of the claim that the trust may have (see 2004 WL 2903889, *6 [D NH Dec. 2, 2004]). It only stands for the proposition that a corporation that makes a filing required under the federal securities laws does not become an ERISA fiduciary on that ground alone (id.; see also, In re Reliant Energy ERISA Litig., 2006 WL 148898, *4 [SD TX Jan. 18, 2006] and In re WorldCom, Inc. ERISA Litig., 263 F Supp 2d 745, 760 [SD NY 2003] [also cited by plaintiffs]). Simply put, In re Tyco and the other cases cited by the plaintiffs in support of their argument have nothing to do with a plaintiff's standing to bring a derivative action on behalf of a retirement plan or with the demand requirement. 
Nor have the plaintiffs pled demand futility with the requisite particularity. As discussed above, all that the plaintiffs allege with respect to demand futility is that (i) any "demand is futile" because the Trustee is a named party, and (ii) the Trustee "is conflicted as it would not sue its employer — GE" (Amend. Compl., ¶ 406). As an initial matter, and as discussed above, the Trustee has been voluntarily dismissed from this action, with prejudice, so it is no longer a party. The plaintiffs cite no authority for the proposition that demand on either a party to a lawsuit or a trustee under an ERISA plan is per se futile. As to the first argument, it defies all logic and puts the cart before the horse to suggest that because a person is a party to the very lawsuit that the plaintiffs have brought that pre-suit demand would have been futile, and, is therefore excused. If naming a party in a lawsuit excused demand, pre-suit demand would never be required. The second argument ignores that the trustees wore two different and independent hats. One, they were employed by the issuer, GE. But, in their other capacity, they were trustees with fiduciary duties requiring them to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries" (29 USC § 1104[a][1][A]).
Turning to the remaining demand futility argument, no facts are alleged in support of the notion that the Trustee is conflicted and "would not sue its employer." Such a bare bones and conclusory allegation is insufficient to meet the pleading requirement articulated in Velez, supra. Notably, to the extent that the Trustee is defined as the conflicted "Trustee" in the Amended Complaint, the Trustee is a "directed trustee," which under ERISA has no authority and discretion to manage and control the Retirement Plan assets (see In re WorldCom, Inc. ERISA Litig., 354 F Supp 2d 423, 444 [SD NY 2005]).
In addition, and contrary to the plaintiffs' contention at oral argument, the Trust Agreement does not contain a broad general waiver of fiduciary duty on the part of the trustees (see 10/16/2019 Tr., p. 27:13-18). As discussed above and at oral argument, pursuant to the Trust Agreement (and, nothing alleged by the plaintiffs in their papers [*7]indicates the contrary), the Trustee disclaims responsibility for the buy/sell decision of Trust beneficiary and does not otherwise generally disclaim its fiduciary duties or otherwise indicate that it has no responsibility to bring suit on behalf of the trust. Quite the contrary, as set forth above, Section 5(j) of the Trust Agreement provides that the Trustees have the right to bring suit on behalf of the Retirement Trust and to represent the Retirement Trust in all suits. In other words, with respect to plan participants who have bought into the plan, like the plaintiffs here, nothing is waived in the way of any fiduciary duties or responsibilities as to the management of the trust corpus, and, as discussed below, the trustees are subject to the fiduciary obligations imposed upon them as fiduciaries under ERISA. The court simply has no basis in this record to assume that the Trustee(s) will not meet its fiduciary obligation in evaluating a demand to bring suit. Accordingly, the complaint is dismissed, without prejudice, for failure to either make a demand or adequately plead demand futility. 
II. ERISA  Section 502 (29 USC § 1132[a])
The defendants also argue that the plaintiffs' claim is barred by Section 502(a) of ERISA, "the sole ERISA provision authorizing and empowering ERISA plan participants and beneficiaries to bring a civil action" (Def. Supp. Memo., p. 11, citing 29 USC § 1132[a]). The defendants argue that, "Section 502 (a) does not authorize suits by ERISA plan participants under Section 11 of the Securities Act" because "[o]nly plan trustees can assert claims under Section 11 of the Securities Act." Under Section 403(a) of ERISA, plan trustees have exclusive authority to manage and control plan assets, including causes of action that plans may have against third parties (29 USC §1103[a]). Section 502(a), in turn, addresses the right of plan participants and beneficiaries to bring a civil action and sets forth specific categories of actions where they may do so (29 USC § 1132[a]). For example, under Section 502(a):
Persons empowered to bring a civil action
A civil action may be brought —
(1) by a participant or beneficiary —
(A) for the relief provided for in subsection (c) of this section, or
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title[breach of fiduciary duty]
(29 USC § 1132[a][1]-[2] [emphasis added]).
The defendants argue that notably absent from that list is any authority for ERISA plan participants to bring claims under the securities laws (e.g., Section 11 of the 1933 Act). This necessarily means, the defendants argue, that only plan trustees can assert claims under Section 11 of the 1933 Act, i.e., that by statute, ERISA plan participants and beneficiaries are only authorized to assert the claims expressly enumerated in Section 502 (a), and that claims not enumerated in Section 502 (a) are not authorized.
As an initial matter, the court notes that it is well settled that ERISA plans pursuant to 502 (d) can bring claims as a plaintiff and have brought claims pursuant to [*8]the securities laws (see, e.g., Iowa Pub. Empl. Retirement Sys. v MF Global, Ltd., 620 F3d 137 [2d Cir 2010]; Bricklayers & Masons Local Union. No. 5 OH Pension Fund v Transocean Ltd., 866 F Supp 2d 223 [SD NY 2012]; Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v Arbitron Inc., 741 F Supp 2d 474 [SD NY 2010]). The court also notes that plan beneficiaries have brought derivative claims for delinquent contributions, and such claims are not set forth in the list of claims set forth in Section 502 (a) of the statute (e.g., Diduck v Kascycki & Sons Contractors, Inc., 874 F2d 912 [2d Cir 1989]; Casteneda v Baldan, 961 F Supp 1350 [SD CA 1997]). Although the court need not address this issue now because demand was not made and demand futility not adequately pled, there does not seem to be any basis to hold that either a plan beneficiary could not sue the trustee for breach of duty seeking an order compelling the trustee to bring a lawsuit under Section 11 or to proceed derivatively under Section 11 if a demand is made, or that demand futility is properly alleged and the ERISA trustees are alleged to have breached their fiduciary duties (see e.g., Diduck, supra [permitting derivative claim under ERISA and noting that "[a] participant in a fund governed by ERISA can sue derivatively on behalf of the fund 'only if the plaintiff first establishes that the trustees breached their fiduciary duty'" (quoting Alfarone v Bernie Wolff Constr. Corp., 788 F 2d 76, 80 [2d Cir 1986], cert denied, 479 US 915 [1986]; and citing McMahon v McDowell, 794 F 2d 100, 108-11 [3d Cir 1986], cert denied, 479 US 971 [1986]; Struble v New Jersey Brewery Empl. Welfare Trust, 732 F2d 325, 336-38 [3d Cir 1984])]).
III. Claims against individual defendants dismissed with prejudice because they are barred by the statute of repose.
Notwithstanding the foregoing, the claims against Messrs. Immelt and Bornstein and Ms. Hauser are time barred and, therefore, must be dismissed with prejudice. As noted, the plaintiffs challenge GE's February 28, 2014 registration statement on SEC Form S-8 "relating to 100,000,000 shares of the Company's common stock to be offered and sold under the GE Retirement Savings Plan" (Amend. Compl. ¶ 49).
Section 13 of the 1933 Act provides:
No action shall be maintained to enforce any liability created under [§ 11] unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence . In no event shall any such action be brought to enforce a liability created under [§ 11] more than three years after the security was bona fide offered to the public
(15 USC § 77m[emphasis added]). 
Thus, Section 13 is both a statute of limitations and a statute of repose. The first sentence of the Section sets forth the relevant statute of limitations time period, i.e., "one year after the discovery of the untrue statement or the omission." The last sentence sets forth the statute of repose, i.e., "no more than three years after the security was bona fide offered to the public." For the avoidance of doubt, the defendants argue that the claims here are time barred under the statute of repose.
Section 13 was enacted to give more "explicit and certain protection to defendants" and to "'effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time'" (California Pub. Empl. Retirement Sys. v ANZ Sec., Inc., 137 S Ct 2042, 2049 [2017], quoting CTS Corp. v Waldburger, 134 S Ct 2175, 2183 [2014]). "The 3-year time bar in § 13 reflects the legislative objective to give a defendant a complete defense to any suit after a certain period" (id.).
Here, the challenged registration statement is dated February 28, 2014 and the statute of repose for Section 11 claims begins to run when the security is "'bona fide offered to the public'" (Footbridge Ltd. Tr. v Countrywide Fin. Corp., 770 F Supp 2d 618, 623 [SD NY 2011], quoting 15 USC § 77m). "The 'bona fide' offering date of a registered security is the effective date of the registration statement," i.e., here, February 28, 2014 (id.). This action, however, was not filed until June 22, 2018 — more than four years after the February 28, 2014 registration statement became effective. Although the February 28, 2014 registration statement "incorporates future filings" (Amend. Compl. ¶50), this only changes the bona fide offering date for issuers and underwriters, not officers and directors (Footbridge, 770 F Supp 2d at 623). 
Rule 430B, which is part of the Securities Offering Reform (SOR) governs Section 11 liability periods under some circumstances (17 CFR § 230.430B[f][2], [f][4]; In re Countrywide Fin. Corp. Sec. Litig., 2009 WL 943271 *5 [CD CA 2009]). Rule 430B changed preexisting law in that "[p]re-Rule 430 timing law did not distinguish among any actors except for underwriters, whose liability at that time was governed solely by § 11(d) (creating a special timing rule for underwriters)" (In re Countrywide, 2009 WL 943271 *6). However, for registration statements effective on or after December 1, 2005 (the SOR's effective date), Rule 430B provides that, "some types of post-effective amendments will create a new effective date and initial bona fide offering date 'only for the issuer and for a person that is at the time an underwriter,'" i.e., not for officers like Messrs. Immelt and Bornstein and Ms. Hauser, who signed the shelf registration documents (id., quoting SOR Release, 70 Fed Reg at 44773-74; CFR §§ 230.430B[f][2], 230.430B[f][4][ii]).
As the SOR Release explains:
we believe that for other persons, including directors, signing officers, and experts, the filing of a form of prospectus should not result in a later Section 11 liability date than that which applied prior to our new rules. Therefore, under Rule 430B, except for an effective date resulting from the filing of a form of prospectus for purposes of updating the registration statement pursuant to Section 10(a)(3) or reflecting fundamental changes in the information in the registration statement pursuant to the issuer's undertakings, the prospectus filing will not create a new effective date for directors or signing officers of the issuer. Any person signing any report or document incorporated by reference in the prospectus that is part of the registration statement or the registration statement, other than a document filed for the purposes of updating the prospectus pursuant to Section 10(a)(3) or reflecting a fundamental change, is deemed not to be a person who signed the registration statement as a result
(70 Fed Reg at 44774 [emphasis added]).
Because the plaintiffs did not file this action until June 22, 2018, more than four years after the February 28, 2014 registration statement first became effective, and because the regulations resetting the bona fide offering date for securities do not apply to GE's directors and officers, plaintiffs' Section 11 claims against Messrs. Immelt and Bornstein and Ms. Hauser are barred by the three-year statute of repose in Section 13 of the 1933 Act and must be dismissed with prejudice. To the extent that the plaintiffs argue that the claims are timely because GE's form S-8, which was signed by Messrs. Immelt and Bornstein and Ms. Hauser, was incorporated into later filings and therefore should be deemed a new registration statement, the SOR makes clear that the Section 11 liability was only being extended to the "registrant," i.e., GE, and not to the individual officers and directors.
IV. No need to consider stay
The court need not consider the defendants alternative request for a stay.
Accordingly, it is
ORDERED that the defendants' motion to dismiss is granted and the complaint is dismissed; and it is further
ORDERED that plaintiffs are granted leave to serve and file an amended complaint so as to replead their claims against the corporate defendants, only, within 45 days after service on plaintiffs' attorney of a copy of this order with notice of entry; and it is further
ORDERED that, in the event that plaintiffs fail to serve and file an amended complaint in conformity herewith within such time, leave to replead shall be deemed denied, and the Clerk of the Court, upon service upon him (60 Centre Street, Room 141B) of a copy of this order with notice of entry and an affirmation/affidavit by defendants' counsel attesting to such non-compliance, is directed to enter judgment dismissing the action, with prejudice, and with costs and disbursements to the defendant as taxed by the Clerk; and it is further
ORDERED that such service upon the Clerk of the Court shall be made in accordance with the procedures set forth in the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases (accessible at the "E-Filing" page on the court's website at the address www.nycourts.gov/supctmanh).
DATE November 6, 2019
ANDREW BORROK, J.S.C.